FELTER v. DELAWARE & H. R.
CORPORATION.
No. 3668.

District Court, M. D. Pennsylvania.
July 1, 1937.

Ralph Mastriani and Raymond Bialkowski, both of Scranton, Pa., for plaintiff.

Paul Bedford and Frank A. McGuigan, both of Wilkes Barre, Pa., for defendant.

WATSON, District Judge.

This suit was brought by the plaintiff to recover damages which she claimed to be due her from the defendant as the result of the destruction of her home by fire. The trial resulted in a verdict for the plaintiff in the sum of $3,833.33. The case is now before the court on defendant's motion for judgment, a point for binding instructions having been reserved at the trial, and on defendant's motion for a new trial.

Defendant's motion for judgment raises the question whether, under all the evidence, the court should have directed the jury to return a verdict in favor of the defendant. In considering such a motion, the facts must be viewed in the light most favorable to the plaintiff, and the plaintiff must be given the benefit of every fact and inference of fact pertinent to the issue which may reasonably be deduced from the evidence.

The plaintiff was the owner of a single frame dwelling house located at No. 120 Valentine street, Moosic, Pa., and occupied the dwelling on December 9, 1934. The replacement value of the house at that time was $5,060, and the sound value of the personal property located in the house was $2,882.20.

At about 1:20 o'clock on the morning of December 9, 1934, the plaintiff was awakened by the smell of smoke and discovered a fire burning the latticework on the rear of her house. She immediately awakened her son, who, after viewing the fire, awakened his sister and her children, who were also occupants of the house. All members of the family left the house scantily dressed, making no attempt to extinguish the fire, and went across the street to the home of a neighbor, Mr. Major. At about the time the plaintiff discovered the fire, Mr. Major's daughter, Mrs. Algar, who was on the back porch of Mr. Major's house, saw the fire burning the latticework on the rear of the plaintiff's house. The fire had made only little progress. Shortly after discovering the fire, Mrs. Algar re-entered her house and telephoned a report of the fire. Shortly thereafter she heard the fire alarm whistle blow.

The Moosic Fire Department Hose House was located on Wyoming avenue in Moosic, about one-third of a mile from the Felter home. To reach the Felter home, the Moosic fire truck was required to cross the tracks of the defendant, Delaware & Hudson Railroad Corporation, at Spring street. Considering the railroad tracks as running north and south, the Spring street crossing was 680 feet east of the plaintiff's home, which was close to Spring street on Valentine street.

Shortly after the first alarm was sounded, the Moosic fire truck started toward the fire and arrived at the crossing within a few minutes, where its further progress was blocked by a southbound train owned and operated by the defendant. Plaintiff's witnesses stated that this train blocked the crossing for from fifteen to twenty minutes, and two of plaintiff's witnesses testified that the Moosic fire engine was delayed at the crossing for about fifteen minutes.

In the meantime, a general fire alarm was sounded. In response to the general alarm, the Old Forge fire engine, which was stationed about one mile from the Felter home, started for the fire. It arrived at the crossing immediately after the defendant's train had cleared the crossing and proceeded across the tracks without delay, passed the Moosic fire engine, and attached its hose to the only available fire plug, and the Moosic engine was not attached to the plug. The Old Forge engine won all the water pressure from the plug. When the fire engines arrived at the fire the Felter house and contents were almost entirely destroyed, and no effort was made to save them.

Defendant's employees, who were operating the train which blocked the track, were all familiar with the territory involved, having run trains over this line for several years. The two firemen on the lead engine stated that they saw the reflection of the fire in the sky before the train reached the Spring street crossing. No effort was made to stop the train before reaching the cross-

ing. The train was composed of eighty-six freight cars and engine and was about 3,500 feet in length. After about two-thirds of the train passed the crossing, it was stopped to take on a "pusher engine." Defendant's witnesses testified that this operation required from one-half to one minute and that the train was stopped for no longer than two or three minutes. This testimony is contradicted by the testimony of plaintiff's witnesses, who testified that the crossing was blocked for from fifteen to twenty minutes.

Shortly after he left the burning house, Henry Felter, the plaintiff's son, proceeded across fields to the railroad tracks. He reached the lead engine of defendant's train and told one of the trainmen that his home was on fire and that the train was blocking the crossing. The trainman, who was not identified, said to Henry Felter that they were waiting for a "pusher." Nothing was done to clear the crossing, either by pulling out or by breaking the trip, and Henry Felter testified that the train was still standing on the crossing ten or twelve minutes thereafter.

Plaintiff's house, together with all the personal property in it, was completely destroyed by the fire.

 It is an actionable wrong for a person, natural or corporate, to interfere with the rights of others growing out of the emergency of a fire or conflagration. Where such emergency exists the right to use one's property as he sees fit is subordinated to the exigencies of public safety and private necessity, and society imposes a duty not to use property in such a way as will interfere with activities necessary to the abatement of the emergency. American Sheet & Tin Plate Co. v. Pittsburgh & L. E. R. Co. (C.C.A.) 143 F. 789, 793, 12 L.R.A.(N.S.) 382, 6 Ann.Cas. 626. Specifically, it is the duty of railroad companies to operate their trains with reasonable regard for the right of public firemen and private citizens to use public crossings to reach a fire for the purpose of extinguishing it. The duty, however, does not arise unless it is established that the persons in charge of the train had knowledge of the fire and knowledge of the fact that by running the train past the crossing or by stopping the train on the crossing, the work of extinguishing the fire would be hampered. When such knowledge is established, the railroad company is under a duty to do that which is reasonably necessary to avoid or mitigate its interference and is liable for such damage as results from its failure to do so. American Sheet & Tin Plate Co. v. Pittsburgh & L. E. R. Co., supra; Kirstein v. Philadelphia & R. Ry. Co., 257 Pa. 192, 101 A. 338, 5 A.L.R. 1646.

 In the present case, the railroad's employees learned of the fire before the train entered on the Spring street crossing, but it does not appear that those in charge of the train knew or should have known at that time that by entering on the crossing they would interfere with the extinguishment of the fire. The defendant's employees first learned that the obstruction of the crossing by the train was preventing fire equipment from reaching the fire when they were so informed by the plaintiff's son. If any liability is to be imposed upon the defendant, its liability must be based on something done or left undone after receiving this information. At that time, its employees had all the facts and it became the duty of the trainmen to clear the crossing as quickly as possible, having due consideration for the safety of their train and other trains in the vicinity. The plaintiff's testimony was to the effect that the crossing was not cleared immediately after the person on the engine was informed of the interference. Plaintiff's son stated that the train had not moved ten or twelve minutes thereafter. Such failure or refusal on the part of the defendant's employees to take any action within this extended period, unexplained, raises a presumption of negligence. The Act of March 20, 1845, P.L. 191, § 1; June 9, 1911, P.L. 726, § 1 (67 P.S.Pa. § 452), makes it unlawful for any railroad company to block up or obstruct the passage of any crossing of public streets or roads. It is established that where it is shown that a crossing has been obstructed by a railroad train for an unreasonable length of time, the burden is shifted to the railroad company to satisfy the jury that the obstruction could not have been avoided by the exercise of proper care and diligence. Pennsylvania R. Co. v. Kelly, 31 Pa. 372; Todd v. Philadelphia & Reading Ry. Co., 201 Pa. 558, 51 A. 332.

In the present case, the defendant made no attempt to explain the delay, but contented itself with a denial that there was any delay. The jury believed the plaintiff's evidence on this point.

 It is the defendant's contention that the plaintiff has failed to prove that the delay caused by the obstruction of the crossing was the proximate cause of the damage

which resulted from the fire. With this contention I cannot agree. When the fire was discovered it had made very little progress. An alarm was sounded immediately after discovery, and the fire engine started for the fire within a few minutes after the alarm. Plaintiff's son testified that he saw the house shortly after he informed defendant's employees of the fact that the train was obstructing the passage of the fire engine; and that only the rear portion of the house was on fire at that time. On the basis of this evidence, the jury was clearly justified in finding that a large part of the house and its contents could have been saved if the fire engine had not been delayed. Gulf, C. & S. F. Ry. Co. v. Saunders (Tex.Civ. App.) 295 S.W. 283. The fact that the amount of damage caused by defendant cannot be calculated with mathematical accuracy should not prevent recovery. The uncontradicted testimony was that the value of the property destroyed was $7,942.20, and the jury found a verdict for less than half of that amount. In my opinion, the damages were calculated with reasonable accuracy from substantial evidence.

The defendant's motion for judgment should be denied.

Defendant's motion for a new trial raises the question whether the court erred in failing to affirm points for charge numbers 1, 2, 3, 4, 5, 6, 7, 8, and 9 submitted by the defendant?

Points 1, 4, 5, and 7 were refused because they were in the nature of legal arguments in support of defendant's final point, which was a point for binding instructions. All of them ended with the phrase, "therefore, the verdict must be for the defendant," and, to that extent, were points for binding instructions. The court having reserved the point for binding instructions, no error was committed by refusing to affirm points 1, 4, 5, and 7.

Point 2 was affirmed in part and refused in part. The part refused was as follows: "And in the absence of wilful and wanton refusal to clear the crossing, the verdict must be for the Defendant." No error was committed in refusing to so charge the jury. The defendant may be held liable for failure to act in the face of a known danger even though such failure does not amount to refusal to act. American Sheet & Tin Plate Co. v. Pittsburgh & L. E. R. Co., supra.

Point 3 was as follows: "If the Jury believe the testimony of Defendant's witnesses, there was no unreasonable delay by Defendant's train in occupying the crossing, and in such case, the verdict must be for the defendant." The court refused to affirm the final clause of this point. To instruct a jury that upon certain facts the verdict must be for one party or the other is dangerous, in that it may be accepted by the jury as a direction to find in favor of one of the parties. There was no error in refusing to affirm this clause. Widdall v. Garsed, 125 Pa. 358, 17 A. 418.

Points 6 and 9 were adequately covered in the general charge.

Defendant's eighth point for charge was as follows: "Plaintiff's claim is founded upon conjecture and speculation as to damages sustained through Defendant; therefore, the Plaintiff in any event cannot have a verdict for more than nominal damages."

Defendant's tenth and eleventh reasons assigned in support of its motion are also directed at the court's charge with respect to damages. The value of the property destroyed and the extent of the damage were described by the witnesses with as much accuracy as can be reasonably expected in cases of this kind. The plaintiff has a right to every possible chance to save his property and is entitled to adequate redress for damages occasioned by interference with that right. The question of damages was clearly for the jury, and the court's instructions on the subject were adequate. Hurley v. Missouri, K. & T. Ry. Co., 170 Mo.App. 235, 156 S.W. 57; Gulf, C. & S. F. Ry. Co. v. Saunders (Tex.Civ.App.) 295 S.W. 283; Valentine v. Minneapolis, St. P. & S. S. M. Ry. Co., 155 Mich. 151, 158, 118 N.W. 970.

I consider the other reasons assigned by defendant in support of its motion to be entirely without merit, and the motion for a new trial must be refused.

The defendant's motions for judgment notwithstanding the verdict and for a new trial are overruled, a new trial is refused, and judgment is directed to be entered on the verdict.