250 F.2d 285
 James LEBECK
v.
WILLIAM A. JARVIS, Inc., Appellant.
PHILADELPHIA ELECTRIC COMPANY
v.
LEVITT AND SONS, Inc., and Crane Operating Company, Inc. (Levittown Supply Corporation).
James LEBECK, Appellant in No. 12167,
v.
CRANE OPERATING COMPANY, Inc., and Levitt and Sons, Inc. (William A. Jarvis, Inc., and Levittown Supply Corporation), Levitt and Sons, Inc., Appellant in Nos. 12100 and 12169.
 No. 12099.
 No. 12100.
 No. 12167.
 No. 12169.
 United States Court of Appeals Third Circuit.
 Argued May 16, 1957.
 Decided October 30, 1957.
 Rehearing Denied November 29, 1957.
 
 Mark D. Alspach, Philadelphia (Joseph J. Murphy, Krusen, Evans & Shaw, Philadelphia, Pa., on the brief), for Levitt & Sons.
 B. Nathaniel Richter, Philadelphia (Charles A. Lord, Richter, Lord & Levy, Philadelphia, Pa., on the brief) for James Lebeck.
 Thomas E. Comber, Jr., Philadelphia, Pa. (K. Robert Conrad, Perry S. Bechtle, Pepper, Bodine, Frick, Scheetz, & Hamilton, Philadelphia, Pa., on the brief), for Crane Operating Co., Inc.
 Before STALEY and HASTIE, Circuit Judges, and SORG, District Judge.
 HASTIE, Circuit Judge.
 
 
 1
 This litigation has resulted from the effort of the plaintiff Lebeck to recover damages for permanently disabling injuries caused by a severe electric shock suffered while working as a pipelayer. Various claims and cross and third-party claims were consolidated in one trial. Lebeck sought to recover against William A. Jarvis, Inc., Levitt and Sons, Inc., Crane Operating Co., Inc., Philadelphia Electric Co. and Levittown Supply Corp., corporations which will from time to time be designated as Jarvis, Inc., Crane, Levitt, the Electric Company and the Supply Corp.
 
 
 2
 At the conclusion of the trial a verdict was directed for Supply Corp. as Lebeck's employer. The verdict of the jury exonerated the Electric Company as blameless in connection with the accident. No appeals have been taken from these rulings. On the other hand, a $350,000 verdict was returned against Jarvis, Inc., and Levitt, and each of these corporations has appealed from the judgment entered thereon. The same verdict was entered against Crane, but the district court ordered a new trial and later, when the plaintiff indicated that he did not propose to offer any new evidence against Crane, dismissed the action as against that defendant. Both the plaintiff and Levitt now contend that the district court exceeded its power and abused its discretion in ordering a new trial as to Crane. Finally, Levitt is also appealing judgments which denied its claims for indemnity and contribution against Jarvis, Inc., and Crane.
 
 
 3
 The accident in suit occurred during work to provide drainage facilities for the vast new housing development known as Levittown, Pennsylvania. The developer, Levitt, utilized the services of Jarvis, Inc., as an independent general contractor to carry out part of this undertaking. Jarvis, Inc., Crane and the Supply Corp. were three distinct corporate entities, each organized by William A. Jarvis who was and remained their sole stockholder. All three corporations participated in some manner and degree in the performance of the work for which Jarvis, Inc., was the general contractor.
 
 
 4
 The accident occurred on land owned by the Electric Company and under a high voltage transmission line of that company. The Electric Company had granted Levitt an easement to construct drainage facilities across its land, it being agreed that Levitt would notify the Electric Company when this work was about to begin. It is admitted that no such notice was given.
 
 
 5
 During the course of this operation the plaintiff was working in a ditch using a crowbar in the laying of pipe. A crane was also being used to facilitate the handling of the pipe. Transmission wires carrying some 19,000 volts of electricity were overhead. In some manner current passed from the wires through the crane and the metal bar into the body of Lebeck causing permanent and totally disabling injuries. The present litigation followed with the plaintiff attempting to show that one or more of the Jarvis owned corporations operated the crane negligently and also induced plaintiff to work in an unsafe place by falsely representing that the wires overhead were not charged. Levitt was charged with negligent failure to notify the Electric Company of the work being performed under its wires so that appropriate precautions could be taken. Answering special interrogatories the jury found that active and primary negligence of both Jarvis, Inc., and Levitt caused the accident.
 
 
 6
 The Primary Liability of William A. Jarvis, Inc.
 
 
 7
 A principal contention on the appeal of Jarvis, Inc., is that the $350,000 verdict returned against it, for what unquestionably were extraordinarily severe, horribly mutilating and totally disabling injuries to a thirty-four year old workman, was so obviously excessive that the refusal of the trial judge to disturb that verdict on motion for new trial should be reversed on this appeal. Moreover, because this is a diversity case, the appellant urges that the judicial handling of this entire question of excessiveness of the verdict should be treated as a matter of state law and patterned after such modes and attitudes as Pennsylvania decisions reveal. However, this contention involves a misconception of the judicial task in this situation. True, in administering diversity jurisdiction a federal trial court properly applies state rules in instructing the jury as to the measure of damages or, more particularly, in identifying these items of injury or loss which may legally be recovered as damages. But otherwise, any claim that the verdict has been excessive requires a trial court to decide no more than whether the jury has reached a result which could rationally and dispassionately be reached by laymen on the basis of evidence relevant to the several categories of legally recoverable damage. This is no more a question of law than is a judge's ruling whether a verdict is against the weight of the evidence. It is merely a form and procedure of judicial control over arbitrary action in fact finding. It may well be that experience with other cases and familiarity with rulings of other judges upon other verdicts has helped shape the trial judge's conception of the limits of an honest and rational award in the circumstances of the case at hand. But such exercise of professional judgment and judicial discretion is not the application of any rule of law, state or federal.
 
 
 8
 Such an exercise of judgment as to the reasonableness of the verdict was required of the trial court in this case. That court rejected the claim of excessiveness in a reasoned opinion, noting particularly that in this case mutilations attended by extreme past and prospective pain, suffering and humiliation were evidenced and loomed large in the catalog of recoverable items. Nothing appears or has been suggested to indicate that in so ruling the court acted arbitrarily. Rather it seems clear that, weighing considerations pro and con, the trial judge exercised his best judgment as to the possible size of a rational verdict in the light of all of the evidence. And that is the extent of our concern as a reviewing court. For our inquiry goes only to the question whether the trial court has exercised discretion in a judicial manner in disposing of this aspect of the motion for a new trial. Cf. Trowbridge v. Abrasive Co. of Philadelphia, 3 Cir., 1951, 190 F.2d 825; Brest v. Philadelphia T. C., 3 Cir., 1954, 216 F.2d 331. Beyond that, it is not our privilege to substitute our judgment for that of the trial court as to the maximum amount which will provide fair recompense for injuries which cannot be equated in any mathematical way with any number of dollars. Scott v. Baltimore & O. Ry., 3 Cir., 1945, 151 F.2d 61. Our authority in this situation is very limited and the Supreme Court has recently indicated that its exercise must be confined strictly. Neese v. Southern Ry., 1955, 350 U.S. 77, 76 S.Ct. 131, 100 L.Ed. 60; Snyder v. United States, 1955, 350 U.S. 906, 76 S.Ct. 191, 100 L.Ed. 796, reversing per curiam United States v. Guyer, 4 Cir., 1954, 218 F.2d 266. The sum of the matter is that we could not lawfully disturb this verdict if we would, and we would not, if we could.
 
 
 9
 The remaining issues raised by appellant Jarvis, Inc., can be stated briefly, and as briefly resolved. It is urged that the denial of this appellant's motion for new trial was an abuse of discretion because the evidence showed that plaintiff was an employee or, under Pennsylvania law, a statutory employee of Jarvis, Inc. Yet neither of these points was presented to the district court in particularization of movant's general assertion that the verdict was against the weight of the evidence. There may arise in the future some extraordinary case in which it will be an abuse of discretion not to grant a new trial for some obvious evidentiary deficiency which the movant for new trial has failed to point out to the court. But this is certainly not such a case. Indeed, a substantial controversy arises on the record as to the proof of facts essential to make the plaintiff either an employee or a statutory employee of Jarvis, Inc. So, even had appellant's present contentions been urged below as grounds for a new trial, to adjudicate them again on appeal would require a reweighing of the evidence which is beyond our province. Cf. Miller v. United States, 3 Cir., 1943, 137 F.2d 592; Magee v. General Motors Corp., 3 Cir., 1955, 220 F.2d 270.
 
 
 10
 For these reasons the appeal of Jarvis, Inc., from the judgment against it fails.
 
 The Dismissal as Against Crane Operating Co., Inc.
 
 11
 We next consider the way in which the court below disposed of the claim against Crane Operating Company, Inc. Both the plaintiff and Levitt have appealed from the judgment dismissing the plaintiff's claim against Crane. They seek thereby to challenge the new trial order which led to the dismissal of this claim. The plaintiff, at least, has standing to complain of this new trial order. He advances two contentions; that the court exceeded its power in granting a new trial and that, in any event, it abused its discretion.
 
 
 12
 The jurisdictional question depends upon the application of Rule 59, Federal Rules of Civil Procedure, 28 U.S.C. to the facts of this case. Under that rule a new trial may be granted pursuant to a motion served within ten days after judgment. Or, the court may act on its own initiative, provided the new trial order is entered not more than ten days after judgment. In this case the order for a new trial was entered some four months after judgment. The plaintiff says that this was untimely action by the court on its own initiative, while Crane insists that the order was issued pursuant to its timely motion for a new trial.
 
 
 13
 Crane had filed a motion for new trial within ten days after judgment. One of the several grounds stated therein was that "the verdict and the special verdict of the jury were against the weight of the evidence." Two broad issues of fact relevant to the claim against Crane had been contested at the trial. There was a question whether the conduct of certain persons in connection with this accident had been negligent. There was a separate factual issue whether these persons were acting as employees of Crane at the time. In its brief and argument on the motion for a new trial Crane urged that the finding that its alleged employees were negligent was against the weight of the evidence, but said nothing about the master-servant issue. The court, after deliberate consideration of the record, was not persuaded on the point Crane had briefed and argued but did conclude that the finding of agency was against the weight of the evidence. Accordingly, the court granted a new trial, stating that its action was taken pursuant to Crane's motion. Plaintiff now insists that this cannot be correct, arguing that in legal contemplation the motion is no broader than the particular evidentiary insufficiency argued in its support.
 
 
 14
 In effect we are asked to extend the doctrine of Freid v. McGrath, 1942, 76 U.S.App.D.C. 388, 133 F.2d 350. In that case a motion had been made for a new trial on the ground that the verdict was a mistake and not the true verdict of the jurors. The court granted a new trial on the ground that the award was inadequate. On appeal the majority opinion reasoned that the court's action was necessarily on its own initiative because the motion as made did not cover the ground upon which the court acted. The dissenting judge and, more recently, a leading writer in this field have considered this legalism an unnecessarily strict construction of Rule 59 which imposes an undesirable limitation on the power of a trial court to achieve substantial justice. See 6 Moore, Federal Practice, 2d ed. 1953, 3850. But the only other Court of Appeals which has considered this problem has followed the reasoning which prevailed in the District of Columbia. Kanatser v. Chrysler Corp., 10 Cir., 1952, 199 F.2d 610, certiorari denied 344 U.S. 921, 73 S.Ct. 388, 97 L.Ed. 710; Marshall's U. S. Auto Supply, Inc. v. Cashman, 10 Cir., 1940, 111 F.2d 140, certiorari denied 311 U.S. 667, 61 S.Ct. 26, 85 L.Ed. 428.
 
 
 15
 It is now urged, that, beyond accepting the Freid doctrine, we should extend it so that no new trial order will be deemed responsive to a motion for a new trial unless it reflects a point briefed and argued in support of the motion as well as ground stated in more general terms in the motion itself. This must be appellant's position since in this case the motion complained that the verdict was against the weight of the evidence and a new trial was ordered on that general ground. We can find no mandate in the rule and no reason in policy for this extreme restriction on the exercise of a salutary judicial power which is a normal feature of post-trial procedure. Therefore, without ruling on the merits of the Freid doctrine itself, we decide merely that it does not reach such a situation as this case presents. Cf. Citizens Nat. Bank of Lubbock v. Speer, 5 Cir., 1955, 220 F.2d 889.
 
 
 16
 Little need be said about the separate contention that the trial court abused its discretion in granting Crane a new trial. The court thought that the evidence which indicated that the negligent persons were not acting as Crane's employees was so much more persuasive than the evidence to the contrary that a new trial should be granted. There was significant evidence looking both ways on this issue. On the appeal of Jarvis, Inc., from the order denying it a retrial in this case we agreed with the plaintiff that it was not our function to reweigh conflicting evidence after the trial court had denied a motion to set aside a verdict as against the weight of the evidence. By the same token we should not and we do not disturb the granting of a new trial predicated upon the trial court's evaluation of evidence looking both ways on an issue of fact.
 
 
 17
 It follows that the judgment dismissing the claim of Lebeck against Crane must be affirmed.
 
 
 18
 The Primary Liability of Levitt and Sons, Inc.
 
 
 19
 The first contention of Levitt and Sons, Inc., is that the record does not establish a legal basis upon which it may be held liable for the plaintiff's injury. In rejecting this contention, as presented on Levitt's motion for judgment notwithstanding the verdict, the district court recognized, as we do, that the controlling principles of tort liability are those of the law of Pennsylvania, where the accident occurred. The trial court's view of the legal basis of liability is made explicit in the following excerpts from the opinion below [145 F.Supp. 720].
 
 
 20
 "Sections 305 and 327 of the Restatement of Torts adopt the legal principle that an act may be negligent if the actor realizes that it is likely to prevent a third person from taking action which the actor realizes is necessary for the aid or protection of the other. The Pennsylvania appellate courts have adopted the principle that there is `a duty to safeguard life and limb * * * (from) consequences of negligence (which) may be foreseen' irrespective of any contractual obligation." * * *
 
 
 21
 "* * * the above-mentioned legal principle exemplified in §§ 305 and 327 was the law in Pennsylvania on the facts of a case such as this, where Levitt and Sons, Inc., (hereinafter called `Levitt') had every reason to believe that the Philadelphia Electric Company would take no action for the protection of these workmen at this remote spot, about 300 yards behind the back of the substation, until it received notice from them * *."
 
 
 22
 We also think that the case against Levitt was sufficient in law and in fact for submission to the jury. In our analysis we start with the very clear proposition of Pennsylvania law that one in the position of the Electric Company here is obligated to exercise care in the highest degree to avoid injury to those known to be working under or near its high tension wires. Cooper v. Heintz Mfg. Co., 1956, 385 Pa. 296, 122 A.2d 699; Brillhart v. Edison Light & Power Co., 1951, 368 Pa. 307, 82 A.2d 44; Commonwealth Trust Co. v. Carnegie-Illinois Steel Co., 1945, 353 Pa. 150, 44 A.2d 594; Ashby v. Philadelphia Electric Co., 1938, 328 Pa. 474, 195 A. 887. Had the Electric Company been informed that a crane was about to be used in work under its high voltage transmission line, it would have owed persons so situated as the plaintiff a duty to take precautions consistent with its obligation to exercise the highest degree of care.
 
 
 23
 But the evidence showed that the Electric Company was never notified of the beginning or progress in this work. At the same time it appeared that Levitt had promised the Electric Company to give such notice, but had failed to do so.
 
 
 24
 The trier of fact was entitled to view this failure to give notice, after even a voluntary undertaking to do so, as conduct creating an unreasonable risk of harm through interference with the normal performance of the Electric Company's duty to protect those working under its lines. See Restatement, Torts § 302(b) and Comment c. Cf. Fair v. United States, 5 Cir., 1956, 234 F.2d 288. In such situations the absence of any relationship between the actor and the person ultimately injured does not prevent the law from imposing a duty of care upon the one in the interest of the other. Cf. Kirstein v. Philadelphia & R. Ry., 1917, 257 Pa. 192, 101 A. 338, 5 A.L.R. 1646; American Sheet & Tin Plate Co. v. Pittsburgh & L. E. R. R., 3 Cir., 1906, 143 F. 789, 12 L.R.A.,N.S., 382; Felter v. Delaware & H. R. Corp., D.C.M.D.Pa.1937, 19 F.Supp. 852; Restatement, Torts § 327. This is but a particular application of what the Supreme Court of Pennsylvania has called the "primary social duty of every person to take thought and have a care lest his action result in injuries to others. This social duty the law recognizes and enforces, and for any injury resulting from any person's lack of elementary forethought, the law holds that person accountable. A normal human being is held to foresee those injuries which are the consequence of his acts of omission or commission which he, as a reasonable human being, should have foreseen." See Bisson v. John B. Kelly, Inc., 1934, 314 Pa. 99, 110, 170 A. 139, 143.
 
 
 25
 Of course in applying this doctrine to the present case the trier of fact must decide whether the conduct of the Electric Company was influenced by the failure of Levitt to act as promised, and whether Levitt realized or should have realized the likelihood that the Electric Company would thus rely upon it. But, assuming a proper handling of these factual issues, we think the imposition of liability was consistent with Pennsylvania law. "While no case is reported in Pennsylvania with the same factual situation as that which gave rise to the present litigation, there is not involved here the application of any new doctrine in the law of negligence. Human life is so complex that the circumstances attending the happening of different accidents are correspondingly varied, but the principle which determines the imposition of liability is simple and constant, being based on the proposition that one who, by substandard conduct, causes injury to another is legally responsible therefor if the harmful consequences of such conduct could reasonably have been foreseen." See Hudson v. Grace, 1943, 348 Pa. 175, 176-177, 34 A.2d 498, 499-500, 150 A.L.R. 366.
 
 
 26
 In addition and separately Levitt contends that prejudicial trial errors require a new trial. One of these claims of error concerns certain testimony of the witness Jarvis.
 
 
 27
 William A. Jarvis, president and sole stockholder of defendants Jarvis, Inc., Crane and the Supply Corp., was called by those parties as a witness when they presented their defense. In regular course of cross examination counsel for the plaintiff asked Jarvis about a conversation with the superintendent of the defendant Levitt "in respect to the possibility of cutting off electric current while your men were working under these various wires on this job." His answer was that "we were to contact Levitt and Sons and they would in turn contact the Electric Company and have the required safety measures taken." The witness was then asked whether Levitt's superintendent had also told him "that it would be impossible to cut off the current under this wire." The witness replied that he did not remember any such conversation. Counsel was then permitted to ask him whether he had said in the course of a pre-trial deposition that Levitt's superintendent had told him that it was impossible to have the current thus cut off. The witness explained that whatever he had said in deposition referred to a different time and another project and thus was not inconsistent with his present denial of any such statement about the matter in controversy. This led the court to rule that what had been said in the deposition was irrelevant to the matter about which the witness was being interrogated and should be disregarded.[1]
 
 
 28
 While this whole matter of an earlier deposition and a conversation mentioned therein had arisen collaterally in an effort to correct or test the recollection of the witness about something else, counsel for the plaintiff also urged that he could properly pursue this inquiry as a source of affirmative evidence of negligence by Levitt, although the conversation did not concern the project now in controversy. His theory was that a false and misleading statement on an earlier occasion, to the effect that the current could not be cut off in this area, may have caused Jarvis to omit steps toward the achievement of this result on the subsequent occasion involved in this suit. The court properly ruled that such an offer of new matter to elaborate the plaintiff's case in chief was not proper cross examination.
 
 
 29
 When the trial was resumed the following day counsel for Levitt began his separate cross examination of Jarvis. He also asked questions about the circumstances of the conversation in the previously mentioned deposition, despite the court's ruling on this matter. Apparently counsel was attempting to show how very different these circumstances were from those which led to the accident in suit and thus to reemphasize the irrelevancy of an item which the court had already excluded from the case.
 
 
 30
 Later, when the defense had been concluded, counsel for the plaintiff was asked whether he wished to offer rebuttal. He stated that he wished to call Mr. Jarvis back and ask him "one question". A side bar discussion then revealed that counsel wanted to ask the witness to state the substance of this very conversation which the court had refused to admit during the cross examination of Jarvis. It was argued to the court that counsel for Levitt had "opened up" this matter and that the substance of the conversation was proper rebuttal. And the court itself spoke of its purpose "to straighten out the confusion * * as a result of the questions which you [Levitt's counsel] asked yesterday." However, the interrogation of Jarvis by Levitt's counsel had at most served to substantiate the court's earlier ruling that this conversation was not connected with the job on which this accident occurred. We can see nothing confusing in it, although it was in improper disregard of the court's earlier exclusionary ruling. Actually, we think the plaintiff was seeking at the very end of the trial to supplement his case in chief with something which he regarded as an important additional indication of Levitt's negligence. Indeed, it will be remembered that counsel earlier had made a substantial argument to the effect that this conversation might be helpful and important in establishing primary negligence of Levitt.
 
 
 31
 In any event, the court was persuaded that additional testimony from Jarvis should be received, but with the witness examined first in the absence of the jury and then, as the court put it, "if I believe the testimony which is given is relevant or significant, when the jury comes back he can get on the stand and testify to such part of what he says as I consider relevant." Jarvis was then questioned in the absence of the jury and the "one question" to be asked him developed into several pages of testimony and colloquy in which the court and counsel for all of the parties participated.
 
 
 32
 At this point the court decided upon another change of procedure. Rather than have the witness testify again before the jury the court announced that it would cull out the relevant parts of what had been said in the jurors' absence and read such excerpts to the jury. All counsel were called upon to assist in deciding what was relevant. Counsel for Levitt participated in this process but objected strongly and repeatedly to this entire method of offering evidence. Ultimately, the edited excerpts were read to the jury by the court. To make clear what happened we set out at this point in parallel columns a part of the proceedings in the absence of the jury and the form in which this material was presented to the jury.
 
 
 33
 "Proceedings in the Jury's Absence "The Actual Presentation to
 the Jury

 "The Court: Now, Mr. Jarvis, we "The Court: Ladies and gentlemen
 would like you to come up to the of the jury, while you were out
 stand. We are going to ask you we had Mr. Jarvis back on the stand
 some questions which we are not and asked him several questions, and
 quite sure how important they are, we have had it typed and I am going
 and until we can ask you about them to read to you the portions of his
 we won't know, and we may have to testimony which have any relevance
 repeat all or some of your testimony in this proceeding, and you will assume
 to the jury later. that as I read these questions
 and the answers — they are questions
 and answers between mostly myself
 and the witness. * * * This is
 just a conversation that is related
 here between Mr. Jarvis and this
 superintendent from Levitt and
 Sons, Inc.

 * * * * * * * * * * * *

 "The Court: Now, whom did you "The Court: Now, whom did you
 inquire of? inquire of?

 "The Witness: From Mr. Ludlow, "The Witness: From Mr. Ludlow.
 Mr. Paulson, and a man whom I
 can't identify by name from the
 Philadelphia Electric Company.

 "The Court: I see. "The Court: I see.

 "The Witness: And at that meeting "The Witness: And at that meeting
 I was told that it would be impossible I was told that it would be impossible
 to turn off the electric current to turn off the electric current
 at that time, because it would at that time.
 run into lawsuits for millions of dollars
 against Levitt and Sons.

 * * * * * * * * * * * *

 "Q. When you learned that it "Q. When you learned that it
 was impossible to cut off the wires, was impossible to cut off the wires,
 did you understand that from then did you understand that from then
 on in while you were working under on in while you were working under
 the company's wires you would not the company's wires you would not
 be able to get the current cut off? be able to get the current cut off?

 "The Witness: I understood — I "The Witness: I understood — I
 took to understand that while we took to understand that while we
 were working under those wires that were working under those wires that
 it was impossible to turn that current it was impossible to turn that current
 off." off."
 
 
 34
 It is immediately apparent that both the court's introductory explanation of what was about to be read and the edited text itself indicated a conversation between two people, Jarvis and Levitt's superintendent Ludlow, in which Ludlow had said that the current could not be cut off. But the actual testimony showed several persons present without specifying which of them asserted the impossibility of cutting off the current. It is only surmise to attribute the statement to the Levitt superintendent rather than to the unidentified participant said to have been connected with the Electric Company.
 
 
 35
 The fact that the editing had thus changed the purport of the testimony was called to the attention of the court by counsel for Levitt both before and after the reading of the edited text to the jury. It is also a fact that, during the discussion of editing, counsel for Levitt agreed that it would be unfair to the Electric Company to inform the jury that an unidentified third person said to be connected with that concern had participated in the conversation as related by Jarvis. But at the same time counsel continued to insist that the entire procedure for the indirect presentation of evidence in edited text was improper. We do not find, in Levitt's agreement that the Electric Company was entitled to the elimination of certain references to it as unfairly prejudicial, any consent that an incorrect and misleading version of the testimony might be introduced to Levitt's own prejudice.
 
 
 36
 The foregoing extended recital of what occurred at a late stage in the trial brings us to grips with a basic question whether the court's reading of edited testimony to the jury was an erroneous method of introducing evidence in a jury trial and, if so, whether it constituted reversible error in the circumstances of this case. That this procedure was incorrect and must be disapproved, we have no doubt. It is fundamental in common law jury trial that the testimony of witnesses on issues to be decided by the jury shall be developed through the interrogation and cross examination of witnesses in the presence of the jury. Indeed, for many years the procedure of the federal courts in trials at law was governed by a statute requiring that "the mode of proof in the trial of actions at common law shall be by oral testimony and examination of witnesses in open court, except as hereinafter provided." 28 U.S.C.1940 ed. § 635. A superseding reenactment of this provision as the first sentence of Rule 43 of Federal Rules of Civil Procedure leaves the basic requirement that testimony "be taken orally in open court" in full force and unimpaired. The only exceptions are those which have been formalized and defined. A court may not vary this aspect of procedure at will, particularly since in cases at law in courts of the United States jury trial is a matter of constitutional right.
 
 
 37
 It has been argued to us, and is also stated in the opinion of the court below on motion for new trial, that what was done here can be analogized to the reading of a deposition in open court. But we see no legal basis for analogical extension of deposition practice as may seem convenient to cover other transcribed statements. Moreover, the situation here presented no special problem. The witness Jarvis was in court and able to testify. The matter to be covered was a single brief conversation. The only reason for not calling him was the desire of the court to expedite the trial. This did not justify the irregular procedure which was adopted, however commendable the motivation may have been.
 
 
 38
 But we would not stand on technical error if it were clear that this procedure had been inconsequential. However, the contrary is suggested at the outset by the fact that both the court and counsel for the plaintiff thought that this additional testimony was relevant and important enough to be introduced as an additional item after the case had otherwise been closed by all parties. It will be remembered too that counsel for the plaintiff strongly maintained the position that this testimony was important evidence of primary negligence on the part of Levitt. Moreover, it is not difficult to picture a jury attributing substantial significance to an item presented at the last moment in an unusual way by the judge himself with his assurance of relevancy.
 
 
 39
 To all of this must be added the fact that the testimony as actually given by the witness Jarvis had been changed so that it erroneously identified the person who had made the damaging statement which was the crux of the testimony. And finally it is to be considered that the question whether Levitt was blameworthy was vigorously contested and so presented that reasonable jurors could have decided it either way. All of these circumstances considered, we think the erroneous submission which concluded the presentation of evidence may well have influenced the jury.
 
 
 40
 It follows that the defendant, Levitt and Sons, Inc., is entitled to a new trial on the plaintiff's claim against it.
 
 The Indemnity Claims
 
 41
 Levitt has also appealed from the judgment denying its third-party claim against Jarvis, Inc., and its cross claim against Crane wherein it sought contractual indemnity and indemnity by operation of law.
 
 
 42
 We have already ruled that there must be a new trial as to the primary liability of Levitt. Accordingly, it is unnecessary to inquire now into the merits of the trial court's carefully reasoned decision denying indemnity, for it cannot be known until after a new trial of the plaintiff's claim against Levitt whether and in what circumstances occasion will arise to adjudicate any claim or claims for indemnity. Therefore, we shall vacate the judgment on third-party claim and cross claim which denies Levitt indemnity against Jarvis and Crane, but without prejudice to the entry of whatever judgment the district court may deem appropriate on these claims after disposition of the primary claim of the plaintiff against Levitt upon remand from this court.
 
 
 43
 On the appeal at our No. 12,099 the judgment against William A. Jarvis, Inc., will be affirmed. On the appeals at our No. 12,167 and No. 12,169 the judgment dismissing the claim against Crane Operating Company, Inc., will be affirmed. On the appeal at our No. 12,100 the judgment in favor of James Lebeck against Levitt and Sons, Inc., will be reversed and the cause remanded for a new trial, and the judgment denying Levitt and Sons, Inc., recovery over against William A. Jarvis, Inc., and Crane Operating Company, Inc., will be vacated without prejudice to any further proceedings on the claims therein adjudicated.
 
 
 
 Notes:
 
 
 [1]
 To the jury the court said: "Ladies and gentlemen of the jury, of course, this previous conversation which Mr. Jarvis had with the superintendent of Levitt and Sons in relation to an operation over a year prior to this accident has nothing to do with this case at all, and therefore should be completely disregarded in your consideration of this case."
 
 
 On Petition for Rehearing
 
 44
 PER CURIAM.
 
 
 45
 In a petition for rehearing William A. Jarvis, Inc., points out that our opinion, sustaining the judgment against it, does not discuss one of its contentions. This appellant argued that it should have been granted judgment, notwithstanding the verdict, on the theory that the uncontroverted evidence required a ruling as a matter of law that Jarvis, Inc., was the statutory employer of the workman Lebeck who sued it for injuries incurred during the course of his employment. We did not overlook this contention. We did not and we do not find merit in it.
 
 
 46
 Nothing else in the petition for rehearing requires comment beyond what has been said in our original opinion. Accordingly, the petition for rehearing is denied.