**Lester C. DINGEE, Appellant,**

v.

**PHILADELPHIA DAILY NEWS.**

No. 14432.

United States Court of Appeals Third Circuit.

Argued Jan. 7, 1964.

Decided Feb. 28, 1964.

Rehearing Denied April 2, 1964.

George J. O'Neill, Philadelphia, Pa., for appellant.

Walter Stein, Philadelphia, Pa., for appellee (J. Dress Pannell, Berger & Stein, Philadelphia, Pa., on the brief), of counsel.

Before STALEY, HASTIE and SMITH, Circuit Judges.

HASTIE, Circuit Judge.

Lester Dingee has taken this appeal from a judgment entered on a jury verdict denying relief on his claim that an article published in the Philadelphia Daily News had libeled him and illegally invaded his privacy. Diversity jurisdiction has made the case cognizable in a federal court.

The article, published in October 1956, was a current report of the arrest of a woman on an abortion charge. The article identified her as "a woman whose charge of a blackmail attempt led to the firing of two veteran detectives two years ago". Dingee was named as one of the "fired" detectives. The article also recalled the 1954 trial of the detectives and its outcome, saying: "The extortion charges against the two men were dismissed. However, they were not restored to their jobs."

Dingee alleged that the statement that he had been "fired" was false and also that the article intimated and caused

people to believe that he had been guilty of extortion. He claimed that the disparagement of his reputation had adversely affected his business as a breeder and seller of dogs and a manufacturer of dog food. He also sought recovery for humiliation and mental anguish.

This case has been tried four times. One of the errors now urged is the granting of a new trial after the first trial had resulted in a $10,000 verdict for Dingee on the defamation count and an additional $10,000 award on the count for violation of privacy.[1] This matter is our first consideration.

The motion for a new trial stated several general grounds for setting aside the verdict, among them that the verdict was excessive and that there had been "fraud and substantial misrepresentation" in the testimony on this issue of damages. In his order granting a new trial, the district judge stated no more than that he took this action "upon consideration of defendant's motion for a new trial and in the interests of justice". Therefore, the appellant argues that we do not know why a new trial was granted. However, the record makes it clear that the court based its action upon one of the grounds stated in the motion, namely, that it would be unjust to permit the jury's award of damages to stand.

From time to time during the trial and in discussion of a defense motion for a directed verdict, the trial judge repeatedly expressed the view that the plaintiff's evidence as to damages was of little probative value. Subsequently, at the hearing on the motion for a new trial and again at the argument of a motion to vacate the order granting a new trial, the judge made it very clear that a new trial was granted because he believed proof of damage had been inadequate and the award must have been speculative. At one point, the court said: "The weakness of the plaintiff's case, I thought, was in the lack of real substantial evidence as to damages". Later, the court expressed its view that "proof really didn't measure up, in my opinion, and the jury in effect were speculating on what damage was actually done to this man". Clearest of all is a colloquy between the court and plaintiff's counsel during argument on the motion to vacate the new trial order. Counsel inquired: "Am I correct in assuming that the motivation of the Court was this particular issue of damages in entering the order?" The court replied: " * * * That is the main reason because I think that is basic."

In these circumstances, the basis of the new trial order and its responsiveness to the defendant's motion are disclosed in the record, though not in the order itself, so that the only inquiry we need make on this appeal is "whether the trial court has exercised discretion in a judicial manner in disposing of this aspect of the motion for a new trial". Lebeck v. William A. Jarvis, Inc., 3d Cir. 1957, 250 F.2d 285, 288.

The record shows that special damage was claimed and that the plaintiff tried to prove loss of earnings as a result of the unfavorable light in which the defendant's article revealed him to actual and prospective customers. To that end the plaintiff himself testified that during the year immediately following the publication his gross earnings decreased about $6,000. However, it was conceded at the time of the motion for a new trial that this statement to the jury had been incorrect and that the decrease in his gross earnings had been only $2,000. Moreover, nothing whatever had been shown as to net profit in either year. In addition, the evidence showed very substantial increases in gross earnings in the subsequent years. In these circumstances, it was not arbitrary to conclude that any award the jury may have made for special damages was speculative.

---

1. Whether separate cumulative awards could properly be made in this case may be doubted, though we do not reach this question. It is arguable that there was but one wrongful act and that the injury suffered was the same, albeit under different theories of liability under both counts.

The trial judge may also have been concerned that he had submitted the case to the jury in a way that permitted an award of punitive damages and the inclusion of such an award in a general verdict without any indication how much of the verdict was punitive. On reflection, it may have appeared that the evidence did not justify any punitive award, yet such an award may have been a substantial part of the verdict.

Certainly it is difficult to find a rational basis for an award of punitive damages in the trial record. The occasion for the article in question was the rearrest of the woman, described as a notorious abortionist, who had been the central figure in the plaintiff's separation from the police force. With the woman thus again in the news it would be difficult to argue that a reminder of the earlier episode in her career was motivated by malice toward Dingee. In this connection it is noteworthy that the reference to the earlier episode was neither lurid nor detailed. It was merely a summary account of occurrences which had been widely published in greater detail when they were current news. Certainly, the article contained no patently reckless misstatement of fact. It was only by interpretation and debatable innuendo that any misrepresentation could be read into the publication. In the circumstances, the judge may well have reasoned that a jury should not be allowed to find malice in fact. Thus, the consideration that the verdict may have included an unwarranted punitive award provided an additional justification for the new trial order.

■ ■ The plaintiff's other points relate to the most recent trial which resulted in a verdict for the defendant.[2] He argues, first, that the court erred in refusing to direct a verdict for the plaintiff on the issue of liability, with only the question of damages left for jury determination. However, one of the plaintiff's major contentions was that the ar-

ticle as a whole stated the events connected with plaintiff's separation with the police force in a misleading way so that the impression was created in the readers' minds that the plaintiff probably had committed extortion or blackmail. Certainly, this meaning was not clear and unescapable on the face of the article, and the plaintiff bore the burden of proof on this issue. Therefore, the court very properly explained this point in its charge and left its determination to the jury.

■ On the privacy count, a major issue was whether the rearrest of the woman who had earlier charged the plaintiff with extortion created a legitimate public interest in a summary restatement of what had occurred two years earlier. Here again, the court properly left to the jury the question whether, in connection with the new arrest, there was a sufficient legitimate interest in these past events to prevent the article from being an unreasonable intrusion upon the privacy of the plaintiff's life.

■ The plaintiff's final contention is that the trial court erred in excluding the testimony of five police officers to the effect that the plaintiff had been with them in court at the very time he was accused of being in the alleged abortionist's apartment trying to blackmail her. But the defendant made no claim in its defense in this case that the plaintiff had indeed been guilty of criminal misconduct. Rather, it was the defendant's position that its publication, fairly read, conveyed no such imputation. Accordingly, the court in its charge had this to say to the jury:

"Does this article charge Dingee with the commission of a crime? If it does, and you make that determination that this article charged him with a crime, he is entitled to a verdict. If also the article was such as to create suspicion in the minds

2. The second trial quickly resulted in a mistrial. In the third trial the jury was unable to agree on a verdict. Nothing re-

specting these two trials is presented on this appeal.

of people in such a manner as to blacken his character, humiliate or degrade him, then he is also entitled to a verdict."

Thus, the plaintiff's innocence of crime was conceded and the jury was told explicitly that the plaintiff was entitled to recover if the defendant's publication charged or suggested that he had been guilty of a crime. In these circumstances, there was no need to receive evidence which would prove that the plaintiff had not been guilty of blackmail or extortion.

The judgment will be affirmed.