Ashby *v.* Philadelphia Electric Company, Appellant, et al.

Argued December 3, 1937.   Before MAXEY, DREW, LINN, STERN and BARNES, JJ.

*John P. Connelly*, for appellant.

*Charles A. Rothman*, for appellee.

OPINION BY MR. JUSTICE MAXEY, January 3, 1938:

This action in trespass was brought by plaintiff against the Philadelphia Electric Company and the James McGraw Company to recover damages for the death of her husband who was electrocuted while engaged in the performance of his duties as a steel worker about a crane which suddenly became electrified by a near-by high tension line of the Electric Company, on July 3, 1935.

The Electric Company maintained its lines along a public highway passing through Lower Providence Township, Montgomery County, and over Skippack Creek Bridge.   The McGraw Company was engaged in

a general contracting business, and entered into a contract with the American Bridge Company for the erection and construction by the latter of the superstructure of the aforementioned bridge on Route 146. Plaintiff's husband was employed as a steel worker for the American Bridge Company, which, in the course of its work on this bridge, had occasion to use a tractor crane for the purpose of lifting the portions of the bridge into their positions. Projecting from this crane was a "boom" from which was suspended a wire cable, ending in a hook that was used to grasp the bridge parts.

At about 11:30 a. m., July 3, 1935, while plaintiff's husband was engaged in the performance of his duties about this crane, he received a fatal electric shock by reason of the fact that an electric current "arced" from the wires of the Electric Company to this tractor crane, with which he was in physical contact.

The negligence charged against the Electric Company was, inter alia, that it failed to have these electric lines a sufficient distance from the ground, that it failed to warn plaintiff's husband of the danger of "disruptive" or "brush discharge" of electric current, that it failed to warn decedent of the danger of electric current arcing, and that it failed to post suitable warning signs. Certain negligence was also charged against the McGraw Company but as to this company a nonsuit was entered by the court below. The case against the Philadelphia Electric Company was submitted to the jury and a verdict was returned in favor of the plaintiff in the sum of $28,000. Defendant's motion for judgment n. o. v. was refused. This appeal followed.

The evidence showed that during the progress of the work numerous letters were written by the McGraw Company to the Electric Company, requesting it to remove and relocate its poles and wires, because of their dangerous proximity to the workmen and to the cranes. A state highway inspector testified that he had discussions with representatives of the Electric Company, rel-

ative to the dangerous proximity of these wires. These wires were accordingly relocated in March, 1935, about ten or fifteen feet from the north side of the proposed bridge, putting the wires completely away from the construction work. But subsequently and before the completion of the bridge work, they were moved back so that the poles were again within the limits of the State's right-of-way and within the area of the work being done. The preparatory work having been completed by the Mc-Graw Company, the American Bridge Company on June 25, 1935, began the execution of its contract to furnish the steel and erect the superstructure of the bridge. Plaintiff's intestate was employed by the Bridge Company to assist in the placing of steel girders for the bridge.

About 11:00 a. m., July 3, 1935, the crane was lifted up from the bed of the creek to the surface of the highway, there to be used in the erection of a steel sidewalk bracket, directly beneath the electric wires. When the crane was brought to a standstill its boom was about a foot or a foot and a half away from the wires, and there it remained motionless with a 1,000-pound girder suspended at the end of the load cable. The decedent and two other employees placed their hands upon the bracket, awaiting the lowering of the cable, so that they could guide the bracket into position. Suddenly there was a flash of electric current from the wires across the intervening space to the boom of the crane, and the deadly current passed into the cable, and into the bracket, and thence into the bodies of the three men, killing plaintiff's intestate instantly. It was testified that there was a gap between the boom and the wires and that at no time did the crane or any of its parts touch or come in contact with the wires. The Electric Company offered no evidence in defense, but submitted a point for binding instructions.

The position of the appellee in this case is that the Electric Company is liable in damages because what

happened to plaintiff's intestate was the natural conse-
quence of the Electric Company's acts of omission and
commission and should have been anticipated by it.  Ap-
pellee cites the case of *Bisson v. John B. Kelly, Inc.,* 314
Pa. 99, 170 A. 139, wherein we said, inter alia: "The
question whether a person charged with negligence or
negligent acts or omissions should have foreseen the in-
juries resulting from these acts or omissions is for the
jury, if there is any credible evidence from which a rea-
sonable conclusion can be drawn in support of the claim
of neglect of duty."  Appellee also cites the case of
*MacDougall v. Pa. P. & L. Co.,* 311 Pa. 387, 166 A. 589,
in which this court quoted with approval the follow-
ing from the opinion of Justice MITCHELL in *Fitzgerald
v. Edison Electric Illuminating Co.,* 200 Pa. 540, 50 A.
161, as follows: "Wires charged with an electric current
may be harmless, or they may be in the highest degree
dangerous.  The difference in this respect is not ap-
parent to ordinary observation, and the public, there-
fore, while presumed to know that danger may be pres-
ent, are not bound to know its degree in any particular
case.  The company, however, which uses such a dan-
gerous agent is bound not only to know the extent of
the danger, *but to use the very highest degree of care
practicable to avoid injury to every one who may be
lawfully in proximity to its wires and liable to come ac-
cidentally or otherwise in contact with them."*  (Italics
supplied.)

It is well settled in cases of this kind that the duty of
those handling electricity of high voltage is the highest
degree of care practicable.  In *Hawk v. Pa. R. R. Co.,*
307 Pa. 214, 160 A. 862, this court (quoting from 20
R. C. L., page 25, sec. 18) said: "When human life is at
stake, the rule of due care and diligence requires every-
thing that gives reasonable promise of its preservation
to be done, regardless of difficulties or expense."

In the instant case the Electric Company knew of the
building of the bridge.  It had actual and constructive

notice of the presence of long-boomed cranes working in the vicinity of its wires. It was shown that the Electric Company's men were at the site of the bridge for some time prior to the time of the accident, engaged in the relocation of a number of gas mains belonging to it. The fact that the Electric Company in March, 1935, moved its wires away from the immediate area of work to a position of safety is some proof that the officers of the company knew that men lawfully engaged in the vicinity of its wires were endangered by them. The fatal error was in moving these wires back before the steel construction work was completed. There were in the instant case sufficient averments and proof of negligence to go to the jury.

Appellant in its Statement of Questions Involved raises three questions: "(1) Is it liable where the evidence fails to disclose that the poles and wires were improperly placed, maintained and operated, and where the evidence fails to disclose that the condition of the poles and wires was not in accordance with the permit from the State Highway Department, and where the wires and poles were in place at least ten days before the accident?" The answer is that under the testimony in this case the poles and wires *were* "improperly placed" in respect to plaintiff's husband who was lawfully engaged in work on the bridge. The company having notice that workmen were necessarily engaged for a considerable period at the time and place in question, should have taken the precaution obviously called for, to wit: moved these wires a safe distance away.

Appellant's second question is based upon the assumption that the proximate cause of the accident was the boom of the crane coming in close proximity to the wires. The question of what is the proximate cause of an accident is almost always one of fact for the jury. See *Helmick v. South Union Twp.*, 323 Pa. 433, 439, 185 A. 609; *Murray v. Pittsburgh Athletic Co.*, 324 Pa. 486, 493, 188 A. 190; Restatement of the Law of Torts, sec.

447. See also "Culpable Intervention as Superseding Cause," by Laurence H. Eldredge, Esq., (1937) 86 University of Pennsylvania Law Review, 121. The case at bar was clearly one for the jury. There is no proof that the crane operator was negligent. The crane was presumably in the position required by the exigencies of the work it was doing. The mere fact that the owner and operator of the dangerous electric wires was "in possession" before the construction of the bridge began, did not justify it in maintaining the wires at this point while the operation of building the bridge was in progress. When the premises occupied by the Electric Company with its high voltage wires necessarily had to be occupied also by human beings in the performance of a lawful work, the duty to remove such wires to a point where the human beings would not be likely to come in contact with them, was the Electric Company's. The jury was justified in finding that the proximate cause of the fatal injury pleaded was the breach of that duty of removal.

The third and final "question involved" is based on the theory that the negligence of the operator of the crane was the sole cause of this accident. We reject this postulate and call attention to what we have already said on the subject of "proximate cause."

In the case at bar the trial court carefully and accurately submitted to the jury the question as to whether the death of plaintiff's intestate was brought about through his own negligence or through the negligence of the crane operator employed by the American Bridge Company or through the negligence of the Philadelphia Electric Company. They were substantially in accord with the instructions of the trial judge in *Murray v. Pittsburgh Athletic Co.,* supra, which met with the approval of this court. Under the pleadings and proof in this case binding instructions would have been inappropriate to the degree of error.

The judgment is affirmed.