Dunn *v.* Atlantic. Refining Company, Appellant.

66

Argued November 20, 1957. Before Jones, C. J.,
Bell, Chidsey, Musmanno, Jones and Cohen, JJ.

*John J. McDevitt, 3rd,* for appellant.

*George E. Beechwood,* with him *Joseph J. Murphy,* and *Beechwood, Lovitt and Murphy,* for appellee.

*William C. Thompson,* with him *Thompson & Daly,* for appellee.

OPINION BY MR. JUSTICE MUSMANNO, January 6, 1958:

On December 17, 1953, Alfred H. Dunn, with three others of a four-man stevedore team, was engaged in an operation which hoisted steel drums, by means of a mechanical winch, from the Atlantic Refining Company pier in the Philadelphia harbor up to the deck and into the hold of a steamship bearing the poetical and melodious name of "Robin Goodfellow." While six of these drums, or steel barrels, were aloft, at the height of twenty feet, one of them, weighing 450 pounds, slipped from the hooks by which it was held, fell and struck Alfred Dunn, killing him instantly.

The drum belonged to the Atlantic Refining Company and the stevedoring work was being done by Murphy-Cook and Company. The administratrix of Dunn's estate brought wrongful death and survival actions against the Atlantic Refining Company which brought in the Murphy-Cook Company as an additional defendant.* After the Trial Court gave binding instruc-

---

* There were two other additional defendants: Lavino Shipping Company and the Seas Shipping Company, but they were excluded by nonsuits and as they in no way figure in these appellate proceedings, they will not be discussed in the opinion.

tions in behalf of the additional defendant, the jury returned verdicts in favor of the plaintiff. The defendant has now appealed, asking for judgment n.o.v., or for a new trial which will enable it to proceed against Murphy-Cook for contribution.

There is no basis for judgment n.o.v. The Atlantic Company delivered to the stevedores at the pier a steel drum with a defective rim or flange, called in the trade a *chime*. The chime at either end serves as anchorage for grappling hooks which, like clawed hands at the end of a long arm, lift the drum into the air. A segment of the flange on the fateful drum was dented in such a manner that it could offer no resistance to the grasp of the hook. Although the hook was first attached to a part of the flange which was intact, it slipped to the damaged section, as the drum, companioned by five others, rose above the pier. Two of the longshoremen saw the hook sliding to the flattened and unresisting portion of the flange when the drum was only two and one-half feet above the pier. They lifted their voices in the proverbial "Look Out!" This was echoed by a deckhand aboard the "Robin Goodfellow," but the warning was too late. The winch operator had thrown his lever, the group of six drums shot upwards, the hook on the tragic drum slipped to the battered part of the rim, lost contact, and the drum plunged, felling Alfred Dunn who, caught between the ship at his back, the mooring pole and drums at either side, and the pier housing in front, was unable to escape. The three other stevedores scurried to safety.

The jury found, and it was justified in doing so, that the Atlantic Company did not exercise the care required by law when it delivered to the dock a drum in such condition that sooner or later, as it started on its journey to distant points on the globe, would evade the imprisoning loading and unloading hooks and fore-

seeably visit physical harm or death on some unsuspecting workman or bystander. Section 388 of the Restatement, Torts, imposed on Atlantic a duty which it failed to fulfil.

Atlantic submits that even if it should be determined that it was negligent under the circumstances, it still would be entitled to judgment n.o.v. on the basis that the decedent was guilty of contributory negligence. The lower Court properly disposed of this contention as follows: "Defendant's motion for judgment n.o.v. argues that even assuming the drum's chimes were sufficiently dented to be dangerous for loading by means of hooks, defendant had no reason to believe that decedent would not recognize the danger. This argument ignores testimony that the drum had been rolled into its loading position by a servant or employee of the defendant and that the damaged end was away from the view of decedent." The space in which the decedent worked was a very narrow one. The width of the pier apron was 77 inches, the decedent could not see the defective end of the drum and, considering the speed at which he was required to perform his part of the hooking and lifting operation, he could not inspect the end of the drum opposite to his view.

The same, however, cannot be said of his three coworkers who had a better opportunity to see the damaged end of the object they were to load. It was a question for the jury to determine whether they exercised the care which the situation demanded.*

---

* In *Kindell v. Franklin*, 286 Pa. 359, we held that the evidence justified the jury's verdict which allowed recovery in an accident where stevedores failed to note a defect in a guy rope involved in a shiploading accident. In *Juhas v. Reading Company,* 326 Pa. 417, we held that the question of negligence was one for the jury where the plaintiff was injured while unloading a freight car with the assistance of a swinging crane operated by defendant's servant.

Murphy-Cook maintains that it was not duty bound to inspect the drums delivered to it by Atlantic, but no one can with legal impunity place in motion an obviously dangerous instrumentality. Even if it were not under contract with Atlantic to handle its cargo properly, it still was required to use due care in its relationship to the rest of the world. Every person in society is bound by natural or man-made law not to dislodge a restraining barrier which will avalanche injury and death on his fellow man. Dunn's team mates were well aware that as the six drums ascended they became a collective Sword of Damocles to main and kill those beneath, unless firmly held in place. Even slight attention must have called the three stevedores' attention to the battered chime, the most elementary reflection should have warned them that the hook could easily turn to the yielding portion of the rim and, of course, they knew what the law of gravitation would do, once the hook released its hold of the 450-pound sword.

There was testimony to the effect that the stevedores were expediting the hoisting operation because they wished to conclude the job before lunchtime. The accident happened three minutes before noon. As vital as is alimentation to the human body, no meal is so important as to be obtained at the price of somebody else's safety. It was a question for the jury to decide whether, because of headlong hurry, insensible indifference, or culpable carelessness, one or more of the three stevedores allowed the defective drum to rise only to fall like a guillotine blade to extinguish the life of Alfred Dunn.

If, in the exercise, of reasonable care, one or more of the attending stevedores could perceive the dented flange, but nevertheless placed the hook so close to it that the turning of the drum caused the hook to move

to the empty rim, with the inevitable slipping and falling of the drum, they could be charged with negligence which would be attributable to their employers. Whether they did or did not exercise this reasonable care could only be resolved by a trial. It is not for this Court to indicate what the answer should or could be. We only state that the record before us did not warrant binding instructions in Murphy-Cook's favor.

We accordingly order a new trial for a limited purpose, namely, so that the Atlantic Refining Company may present evidence against Murphy-Cook in an action for contribution. The verdict of the jury finding the decedent free of contributory negligence and Atlantic guilty of negligence is affirmed, so that regardless of the outcome of Atlantic's action against Murphy-Cook, the judgment in favor of Helen E. Dunn, Administratrix of the Estate of Alfred H. Dunn versus Atlantic Refining Company remains unaffected.

Judgment, with direction indicated, affirmed.