## Ostrowski *v*. Crawford Door Sales Co. et al., Appellants.

Argued December 16, 1965. Before ERVIN, P. J., WRIGHT, WATKINS, MONTGOMERY, JACOBS, and HOFF-MAN, JJ. (FLOOD, J., absent).

*Irving L. Epstein,* for company, appellant.

*Harry P. O'Neill, Jr.,* with him *Walsh and O'Neill,* for appellant.

*William T. Malone,* for appellee.

OPINION BY JACOBS, J., March 24, 1966:

On January 29, 1963, the plaintiff, an employee of the Scranton Casket Company, was injured by a descending overhead door on his employer's premises. He brought an action in trespass against Crawford Door Sales Company of Scranton (Crawford), alleging that Crawford was negligent in installing the door and that as a result of this negligence, the door collapsed, causing plaintiff's injuries. Crawford joined Edward J. Libertoski as an additional defendant, alleging that Libertoski was an independent contractor who installed the door furnished by Crawford and that Libertoski was responsible for any injuries. Libertoski joined Scranton Casket Company (Casket), alleging that his

work was satisfactory to Casket, was accepted by Casket, and that the premises were in the exclusive possession of Casket at the time of the accident so that any responsibility for a dangerous condition was Casket's.

The case was tried in September, 1964, before President Judge HOBAN and a jury. The jury made special findings of negligence and causation as to each one of the defendants and found all three jointly and severally liable, awarding a verdict of $10,000. Crawford and Libertoski filed motions for judgment n.o.v., which were denied by the lower court. They appeal from the judgment entered on the verdict.

The following facts were established at trial: Crawford had a contract with Casket to provide an overhead door completely installed at the entrance to Casket's new factory extension. Crawford supplied the door in sections and the necessary hardware. Libertoski and his workmen picked up this material and installed the door for a fee to be paid by Crawford, as had been their usual business practice for about seventeen years. Libertoski paid his own workmen.

The door in question was a verticle lift, five-section, overhead door, ten feet wide and nine feet high which had been installed about one week before the accident. It weighed between 200 and 230 pounds and was used for ingress and egress by trucks and employees. Unlike the usual garage door which lifts to a certain extent and then folds back so that a section becomes parallel with the ceiling, this door went straight up alongside the upper wall of the factory structure. Operating on guide rails or tracks on either side of the doorway, the door was held by cables attached to the lower section of the door which led to tension springs affixed to the structure. The door was supposed to move easily in either direction when comparatively slight pressure was applied. When the door was installed, the floor of the company's factory addition had

not been completed. To allow for the proposed concrete floor, a door stop had to be provided about eight inches above the ground level. Cleats, wooden two by fours or sixes, six inches in height, were nailed to the door frame and a section of angle iron ($1\frac{1}{4}''$ x $1\frac{1}{4}''$ x $\frac{1}{8}''$) was bolted through the guide rails to the door frame to provide a stop for the descending door at the eight-inch mark.

In addition to the unfinished floor in the building, the overhead construction was also incomplete when the door was installed so that snow or water found its way into the factory addition where the roof of the addition adjoined its wall. The water descended the side of the wall above the door frame and onto the door. Since there was no heat at the time in the addition and temperatures were very low that month, the water froze and ice accumulated on the exterior and interior of the door surface.

Although the door worked satisfactorily the day it was installed, according to Libertoski, a Casket employee testified that it "never worked like it should" and "was always hard to control." On the day before the accident a Casket foreman, investigating a complaint about it, tried the door and found that it was hard to push up and "if I didn't hold it, it would have fell down." Casket's Secretary-Treasurer testified that an employee complained to him about the door on January 28, 1963, but that he didn't look at the door and he didn't remember whether he called Crawford or did anything about it.

On January 29, 1963, plaintiff intended to go outside during his lunch hour. A co-worker, who noticed that the door was hard to raise, preceded him by some distance and was too far in advance for plaintiff to ask him to hold the door for plaintiff. Plaintiff "reached for the door, and when I did, I just heard like

a rifle shot, and that's all I remembered." When he recovered consciousness, plaintiff's arm was caught between a section of the door that had left the track, bending upward and inward, and the remainder of the door. Plaintiff was severely injured and no question is raised concerning the amount of the verdict.

Both Crawford and Libertoski, in requesting this court to enter judgment n.o.v., contend that there was no evidence of negligence on the part of either and that plaintiff failed to prove that any alleged negligence of either was the proximate cause of plaintiff's injuries. After applying the oft-repeated governing principle that the verdict-winner is entitled to the benefit of all findings that reasonably could have been made in his favor and that all contrary evidence is to be rejected, *Jemison v. Pfeifer*, 397 Pa. 81, 152 A. 2d 697 (1959), we reject their contentions and affirm the judgment of the lower court.

## I.

Section 388 of the Restatement of Torts 2d provides that:

"One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier

(a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and

(b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and

(c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous."[1]

In this case plaintiff, who was using the door for the first time, introduced evidence to show that the door was installed one week before the accident; that two wooden cleats and an angle iron were installed to keep the door from descending all the way to the earth-floor, and that the door "was always hard to control." There was evidence that the adjustable springs caused the door to be hard to lift and lowered it too fast, a situation which progressively worsened, and that because of the rapid descent and weight, the stops placed eight inches from the ground were not sufficient to prevent the door from leaving the guide rails. There was also evidence that temperatures went below the zero degree mark in the week between installation and the accident, and that rain or snow froze into ice on the door, adding about 70 pounds to the weight of the door.

Under these circumstances it was for the jury to determine whether the installers of the door had reason to know that the door was likely to be dangerous, considering the size and weight of the door, the size and efficacy of the cleats and small angle iron, the size and tension of the springs, and the likelihood of ice accumulation at that time of year on an outside door. Their special findings of negligence indicate their resolution of this complex factual issue and we will not say they erred as a matter of law. The question of whether a person charged with negligence or negligent acts or omissions should have foreseen the injuries resulting from these acts or omissions is for the jury, if there is any credible evidence from which

---

[1] The fact that the door had been affixed to Casket's building does not preclude this section's applicability. *Foley v. Pittsburgh-Des Moines Co.*, 363 Pa. 1, 68 A. 2d 517 (1949).

a reasonable conclusion can be drawn in support of the claim of neglect of duty. *Ashby v. Philadelphia Electric Co.*, 328 Pa. 474, 195 A. 887 (1938). In this case there was credible evidence to support the jury's finding.

## II.

Admittedly the mere existence of negligence and the occurrence of injury are insufficient to impose liability. Plaintiff has the burden of proving the link of causation or of proving evidence from which a reasonable inference arises that the defendant's negligence was the proximate or legal cause of the injury. *Cuthbert v. Philadelphia*, 417 Pa. 610, 209 A. 2d 261 (1965). The question of what is the proximate cause of an accident is almost always one of fact for the jury. *Ashby v. Philadelphia Electric Co.*, supra. In this case, once the jury determined that there was negligence in the installation of the door, only an independent intervening act of negligence could prevent appellants' negligence from being the proximate cause. The only possible intervening force revealed by the record is an accumulation of ice. Our Supreme Court has said, "it frequently occurs that where intervening forces have come into operation there may be a reasonable difference of opinion as to whether they were extraordinary or normal. If there is room for such a reasonable difference of opinion, the question of legal cause is for the determination of the jury." *Anderson v. Bushong Pontiac Company, Inc.*, 404 Pa. 382, 391, 171 A. 2d 771 (1961), quoting Section 453 of the Pennsylvania Annotations to the Restatement of Torts. The case at bar is an appropriate one for the application of this rule.

Appellants imply that Casket's failure to notify Crawford of the improper functioning of the door should relieve them of liability. Although this regret-

table inaction on Casket's part might be contributory negligence if Casket were the plaintiff, it cannot excuse appellants from their legal responsibility to a third person lawfully using a door which could not be stopped by appellants' own stopping device so soon after installation.

### III.

Thus far in the opinion we have discussed the liability of the installers of the door. Crawford cannot escape liability for installation by claiming that Libertoski was an independent contractor who was in exclusive control of the installation of the door. This situation is controlled by Section 429 of the Restatement of Torts 2d, which reads as follows:

"One who employs an independent contractor to perform services for another which are accepted in the reasonable belief that the services are being rendered by the employer or by his servants, is subject to liability for physical harm caused by the negligence of the contractor in supplying such services, to the same extent as though the employer were supplying them himself or by his servants."

In this case Crawford bid for and was awarded a contract to provide a completed and installed door. The contract price included the cost of installation. Casket dealt only with Crawford and had no reason to think that anyone but Crawford was installing the door. Under these circumstances Crawford remained liable for any negligent installation.

### IV.

After carefully considering all of the testimony, we are unable to pinpoint the precise reason why this door descended through the temporary door stops. How-

ever, unlike the "complete mystery" in *Campbell v. New York Central Railroad Corporation*, 419 Pa. 393, 214 A. 2d 505 (1965), we do know that many factors, including temporary door stops, adjustable springs, and ice accumulation on a door "always hard to control", were present, any one or all of which could have been the cause. We find no errors of law requiring us to reverse the jury's resolution of the negligence and causation issues.

Judgment affirmed.

---

DISSENTING OPINION BY MONTGOMERY, J.:

I find no evidence in this case to impose liability on either Crawford Door Sales Co. or on Edward J. Libertoski. The former provided everything it was required to provide under the contract with Scranton Casket Company and Libertoski installed the door as completely and expertly as possible under the prevailing conditions. In fact he took the extra precaution of providing a temporary stop at the bottom of each runner of the door to accommodate Scranton Casket Company in the use of the door until it had the time and opportunity to lay the concrete floor in this area of the new addition to its factory. Scranton accepted the door as completely installed and was thereafter responsible for its operation.

The cause of the accident which resulted in plaintiff's injuries was entirely and solely the fault of Scranton in failing to remove seventy pounds of ice which had accumulated on the door after it had been properly installed and of which it had ample notice. It would be unreasonable and unjust to hold either Crawford or Libertoski responsible for failure to anticipate that this additional weight would be added to the door and not removed therefrom by Scranton.

I find no merit in the argument that the door as installed, without the additional weight of the ice, was

uncertain and hard to control (what is meant by this is not explained). However, such doors are installed with springs, the tension of which is regulated so that the door may be raised and lowered with the minimum of effort. If the tension is too great a door will raise itself and if too little will require effort to raise it. However, this door was overweighted by seventy pounds of ice and required great effort to raise, with the obvious consequence that when this claimant raised it, the tension of the spring was insufficient to hold it in an open position. As soon as he released his hold, it fell to a closed position with such force that it broke the temporary stops which had been installed for its regulation and ordinary operation.

I would reverse the judgment against Crawford Door Sales Co. and Edward J. Libertoski and order it entered in their favor.

Therefore, I respectfully dissent.