578 A.2d 492

The HARFORD MUTUAL INSURANCE
COMPANY, Appellant,

v.

**Douglas P. MOORHEAD and Marlene B. Moorhead, His Wife,
Individually and Trading and Doing Business as Presque Isle
Wine Cellars, George A. Stevens and Carla Stevens, His Wife
Joseph Bordonaro and Rebecca Bordonaro, His Wife, Trading
and Doing Business as Bordonaro's Fruit Stand, Ralph Ga-
gliordi, Crosby & Baker Wine Makers Ltd., and Oak Barrel
Wine Crafts, Oregon Specialty Co., Gateway Hardware Com-
pany, Sesol France and Schenley Distillers, Inc., Appellee.**

Superior Court of Pennsylvania.

Argued Dec. 6, 1989.

Filed July 25, 1990.

Michael S. Jan Janin, Erie, for appellant.

William J. Kelly, Erie, for Douglas and Marlene Moorhead, appellees.

Before DEL SOLE, KELLY and HESTER, JJ.

KELLY, Judge:

In this opinion we are called upon to decide whether under a comprehensive general liability insurance policy, the duty to defend an insured from liability in a civil suit where the insured is sued on the basis of a "negligent failure to warn" is removed by a "Products Hazard" exclu-

sion. We find that the duty to defend exists in this action, and affirm.

The underlying facts of this appeal were accurately set forth in the trial court opinion as follows:

The Moorheads operate a business known as Presque Isle Wine Cellars in North East, Pennsylvania, one of which business purposes is to sell wine making supplies, including a product called a sulphur strip. At some point it is alleged that Joseph Bordonaro, doing business as Bordonaro's Fruit Stand, purchased a supply of these sulphur strips from the Moorheads with the intent of resale. He, in turn, sold these strips to a customer, George Stevens, along with other supplies for making wine, which included one or more old wooden whiskey barrels. The sulphur strips purchased are apparently used in the wine making process to kill bacteria in or otherwise make ready the grape fermenting vessel. The strips are first ignited and then placed inside of the vessel to perform their task. When Stevens, on his own property, ignited his sulphur strips and placed them in the former whiskey barrel, the flames from the sulphur strip ignited preexisting explosive alcohol vapors within the barrel, causing the barrel to explode. As a result of this explosion, pieces of the barrel were blown in a number of directions, one of which was toward Ralph Gagliordi, an invitee of Stevens and Plaintiff in the Lawrence County action, who was struck and severely injured on the lower part of his leg.

The Moorheads have, as a result of their alleged sale of sulphur strips to Bordonaro, been joined as Additional Defendants to the underlying action which they assert entitles them to be defended by The Harford Mutual Insurance Company, ... as their insurer. They have at all relevant times been insured under a comprehensive general liability policy issued by The Harford covering their business operations.

Trial Court Opinion at 1–3.

Subsequently, Harford filed a declaratory judgment action seeking a determination of whether the insurance poli-

cy issued to the Moorheads covered the liability which may be incurred as a result of the instant suit, and derivatively, whether or not Harford owed a duty to defend the Moorheads in the underlying litigation. Each party thereafter filed summary judgment motions. The trial court agreed with the Moorheads and entered judgment in their favor. Harford later filed this timely appeal.

At the outset, we note that in reviewing orders granting summary judgment, our scope of review is limited. This Court has previously summarized the appropriate standard as follows:

> A motion for summary judgment may properly be granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. In passing upon a motion for summary judgment, the court must examine the record in the light most favorable to the nonmoving party. Moreover, it is clear that to survive a motion for summary judgment, the non-moving party may not rely merely upon the controverted allegations of the pleadings, but must set forth specific facts by way of affidavit, or in some other way as provided by the rule, demonstrating that a genuine issue exists.

*Kerns v. Methodist Hospital*, 393 Pa.Super. 533, ——, 574 A.2d 1068, 1069–70 (1990); *Salerno v. Philadelphia Newspapers*, 377 Pa.Super. 83, 88–9, 546 A.2d 1168, 1170–71 (1988) (citations omitted); Pa.R.C.P. 1035(d). Mindful of this standard, we turn to Harford's appeal.

Instantly, Harford contends that summary judgment was improperly granted because the policy established no duty to cover or defend the Moorheads for the precise claim asserted in the underlying litigation. Specifically, Harford maintains that the "Products Hazard" exclusion contained in the subject policy was intended to *exclude* coverage of an action brought against the insureds which alleged injuries sustained as a result of products sold by the Moorheads.

Harford construes the exclusion to preclude coverage of "products liability" actions, and argues that despite the fact that the complaint contains only allegations of "negligence," the *essence* of the underlying complaint is one of products liability. Essentially, Harford contends that the decision to phrase the instant complaint under the guise of negligence was an exercise of mere semantical gamesmanship designed to circumvent the intent of the "Products Hazard" exclusion.

In response, the Moorheads argue that the terms of the instant "Products Hazard" exclusion do not unambiguously exclude a claim that the insured was negligent in failing to provide warnings or instructions. The Moorheads submit that the allegations of the instant complaint charge them with negligent conduct only, and as such, coverage and defense should be provided. The trial court embraced the Moorhead's arguments.

## I. *Duty to Defend*

An insurer's duty to defend the insured is dependent upon the derivative question of coverage. It is well established that while an insurer is not required to defend an insured in every claim brought against it, an insurer must defend in any suit in which there exists *actual* or *potential* coverage. *Gene's Restaurant v. Nationwide Ins.*, 519 Pa. 306, 308, 548 A.2d 246, 246 (1988); *Gideon v. State Farm Mutual Automobile Ins. Co.*, 410 Pa. 55, 58, 188 A.2d 320, 321–22 (1963); *Techalloy Co. v. Reliance Ins. Co.*, 338 Pa.Super. 1, 8, 487 A.2d 820, 824 (1984); *see also D'Auria v. Zurich Ins. Co.*, 352 Pa.Super. 231, 234, 507 A.2d 857, 859 (1986). The terms of the policy must be compared to the nature of the allegations of the complaint, and a determination made as to whether, if the allegations are sustained, the insurer would be obligated to incur the expense of the judgment. *Gene's Restaurant, supra*, 548 A.2d at 246; *see also Springfield Tp., et al. v. Indemnity Ins. Co. of North America*, 361 Pa. 461, 64 A.2d 761 (1949); *Donegal Mutual Ins. Co. v. Ferrara*, 380 Pa.Super. 588, 552 A.2d 699 (1989); *D'Auria v. Zurich Ins. Co, supra; Vale Chemical Co. v.*

*Hartford Acc. & Indem.*, 340 Pa.Super. 510, 490 A.2d 896 (1985); *Eastcoast Equipment Co. v. Maryland Casualty Co.*, 207 Pa.Super. 383, 218 A.2d 91 (1966).

### A. *Terms of the Policy*

The policy the Moorheads purchased from Harford to protect themselves from potential lawsuits, commonly referred to as a comprehensive general liability insurance policy, provides that coverage shall extend to "all sums which the insured shall become legally obligated to pay as damages because of (a) bodily injury, or (b) property damage to which this insurance applies...." Policy rider at L6395(a) (Ed. 1–73). This broad declaration of coverage is limited, however, by exclusions found elsewhere in the policy, to wit:

> It is agreed that such insurance as is afforded by the bodily injury liability coverage *does not apply* to bodily injury or property damage included within the completed operation hazard or the *products hazard.*

Policy rider GL21 04–0766 (emphasis added). The latter of these exclusions is more specifically defined in a separate paragraph as follows:

> "Products Hazard" includes bodily injury and property damage *arising out of* the named insured's products or reliance upon a representation or warranty made at any time with respect thereto, but only if the bodily injury or property damage occurs away from premises owned by or rented to the named insured and after physical possession of such products has been relinquished to others.

Endorsement MP 00 90 (Ed. 07 77) (emphasis added). No other definitions of or references to the "Products Hazard" exclusion are offered.

In interpreting this policy, we must remember that foremost among insurance laws regarding the reviewing court's determination of policy coverage, remain the general rules of policy construction. To promote stability and predictability between parties in a contractual relationship, the common law has assigned to the courts the task of interpreting the intent of the parties. *DiFabio v. Centaur Ins. Co.*, 366

Pa.Super. 590, 593, 531 A.2d 1141, 1142 (1987). Words of an insurance policy which are unambiguous and clearly reflect the intent of the parties should be construed according to their plain and ordinary meaning, and we should give effect to that language. *See Hutchison v. Sunbeam Coal Corp.*, 513 Pa. 192, 519 A.2d 385 (1986); *Standard Venetian Blind Co. v. American Empire Ins.*, 503 Pa. 300, 469 A.2d 563 (1983); *Pennsylvania Manufacturers' Assn. Ins. Co. v. Aetna Casualty and Surety Ins. Co.*, 426 Pa. 453, 233 A.2d 548 (1967). However, overly-subtle or technical interpretations may not be used to defeat reasonable expectations of insureds. *See Huffman v. Aetna Life and Cas. Co.*, 337 Pa.Super. 274, 486 A.2d 1330 (1984). Thus, where reasonably intelligent people could differ as to the meaning of a contractual provision, the term may properly be characterized as ambiguous. *Loomer v. M.R.T. Flying Service, Inc.*, 384 Pa.Super. 244, 247, 558 A.2d 103, 105 (1989); *Musisko v. Equitable Life Assurance Society*, 344 Pa.Super. 101, 496 A.2d 28 (1985). In light of the "manifest inequality of bargaining power between an insurance company and a purchaser of insurance," *see Standard Venetian Blind, supra,* 469 A.2d at 567, ambiguities must be resolved *contra proferentem,* or against the insurer as drafter of the agreement. *DiFabio v. Centaur, supra,* 531 A.2d at 1142; *see also Rusiski v. Pribonic,* 511 Pa. 383, 515 A.2d 507 (1986).

■ The instant dispute revolves around the interpretation of a provision which has been construed by this Court previously. In *Friestad v. Travelers Indemnity Co.*, 260 Pa.Super. 178, 393 A.2d 1212 (1978), this Court was faced with the question of whether coverage under a similar comprehensive general liability insurance policy was precluded by an *identical* "Products Hazard" exclusion where an insured was sued for negligently installing a furnace. *Friestad, supra,* 393 A.2d at 1213. Writing for the majority, in a comprehensive opinion which traced the historical and evolutionary distinction between several typical policy exclusions, Judge Cercone reasoned that as "the principal

thrust of a products hazard [coverage] is the insured's manufacture or sale of a product," *id.* 393 A.2d at 1213 n. 2, "it is more preferable by far to define the products hazard in terms of products liability law, and apply *the exclusion only when a product, rather than a service, is the cause in fact of damages or injury* to a third person." *Friestad, supra,* 393 A.2d at 1217. Thus, Judge Cercone concluded, where the insureds are sued merely for negligently *servicing* a product, the "Products Hazard" exclusion would not apply. *Id.,* 393 A.2d at 1217.

Numerous courts in other jurisdictions have reached similar conclusions in interpreting the language of the common "Products Hazard" exclusion found herein. The Arizona Court of Appeals, faced with a similar question of the applicability of the exclusion in *Brewer v. Home Ins. Co.,* 147 Ariz. 427, 710 P.2d 1082 (1985), cogently summarized many of the leading cases on point, and concluded:

> The foregoing cases establish the following principles. Products Hazard coverage is intended to protect the manufacturer or seller of goods from claims for injury and damage arising out of the use of the insured's products. The risk which is being insured is that the product will not perform in the manner expected. If the product works as it is supposed to, but through other negligence the insured's product causes injury or damage, there is no coverage. *Thus, where Products Hazard coverage is excluded, the insurer is not responsible for the failure of the insured's products or goods to work as anticipated.*

*Id.,* 710 P.2d at 1086 (emphasis added) (*citing Viger v. Commercial Ins. Co.,* 707 F.2d 769 (3d Cir.1983) ("Products Hazard" exclusion *applicable* where complaint alleged failure to warn of contaminated fish); *Buckeye Union Ins. Co. v. Liberty Solvents & Chemicals Co.,* 17 Ohio App.3d 127, 477 N.E.2d 1227 (1984) ("Products Hazard" exclusion *not applicable* where complaint alleged negligent mishandling of waste product, not defective condition of product itself); *K–C Mfg. Co. v. Shelby Mut. Ins. Co.,* 434 So.2d 1004 (Fla.Dist.Ct.App.1983) ("Products Hazard" exclusion *appli-*

*cable* where complaint alleged failure to warn of defective nature of go-cart); *Aetna Cas. & Sur. Co. v. Richmond,* 76 Cal.App.3d 645, 143 Cal.Rptr. 75 (1977) ("Products Hazard" exclusion *not applicable* where complaint alleged negligent and careless adjustment of ski bindings); *Templet v. Goodyear Tire & Rubber Co.,* 341 So.2d 1248 (La.Ct.App.1976)) ("Products Hazard" *protection not available* where complaint alleged seller failed to warn of dangers associated in mounting a tire from the wrong side of the rim); *Cooling v. United States Fid. & Guar. Co.,* 269 So.2d 294 (La.Ct.App. 1972) ("Products Hazard" exclusion *not applicable* where complaint alleged failure to warn of need for using safety devices with products)); *see also LaBatt Co. v. Hartford Lloyd's Ins. Co.,* 776 S.W.2d 795 (Tex.App.1989) ("Products Hazard" exclusion *applicable* where complaint alleged failure to warn of dangerous chemical contained in food).

We find the *Brewer* court's conclusion supported by relevant cases, and consistent with this Court's holding in *Friestad.* Alleged negligence which does not involve the sale of a defective product is of a type which "occurs occasionally in the course of business and is a risk for which businesses buy general coverage." *Cooling v. United States Fid. & Guar. Co., supra,* 269 So.2d at 297. To construe a "Products Hazard" exclusion to apply in a suit later brought against an insured where the product sold was not the *cause of the damage,* but was merely an *incidental instrumentality* through which the damage was done, would defeat the purpose of purchasing such a policy by rendering meaningless much of the stated coverage. *See Florida Farm Bureau Mutual Insurance Co. v. Gaskins,* 405 So.2d 1013, 1015 (Fla.Dist.Ct.App.1981). Thus, we conclude, as did this Court in *Friestad,* that the "Products Hazard" exclusion applies only when a *product,* rather than a *service,* is the alleged cause in fact of damages or injury to a third person.

### B. *Nature of the Complaint*

The pleadings in the underlying litigation include the following allegations in Count I of the complaint entitled "Negligence."

10. Some or all of the wine making equipment, including sulphur strips, which original defendant Ralph Gagliordi used on September 26, 1985, had been purchased by original defendants Joseph and Rebecca Bordonaro, t/d/b/a Bordonaro's Fruit Stand, from additional defendants Marelen B. Moorhead and Douglas P. Moorhead, her husband, t/d/b/a Presque Isle Wine Cellars.

11. Either as part of the same transaction by which the additional defendants supplied the wine making equipment, including sulphur strips, to original defendants Joseph and Rebecca Bordonaro, or as part of a promotion, *the additional defendants also supplied in 1985–1986 catalog, which purported to give instructions on the proper use of sulphur strips for the purpose of inhibiting molds and bacteria. In turn, original defendant Joseph Bordonaro based the instructions he gave original defendant Gagliordi upon the contents of this catalog. . . .*

12. The incident related in the plaintiff's amended complaint, and any resultant damages, were in no way due to the negligence of original defendant Ralph Gagliordi, *but were due solely and proximately to the negligence, willfulness, wantonness* and *recklessness of the additional defendants, Marlene B. Moorhead and Douglas P. Moorhead,* her husband, t/d/b/a *Presque Isle Wine Cellars generally* and in the particulars alleged in paragraph 13 A–R of plaintiff's amended complaint, which particulars are hereby incorporated by reference.

Plaintiff's Complaint Against Additional Defendants at 3–4 (emphasis added). The trial court, in reviewing the nature of this complaint, found,

The tort claims being made against the Moorheads as Additional Defendants in the Lawrence County action are clearly based upon alleged acts of negligence on their part in not ensuring that the terminal user of the sulphur strips was provided with detailed and adequate information as to their use in the form of warnings and/or instructions. The Moorheads quite correctly point out

that there are no allegations whatsoever in the original complaint that the sulphur strips themselves were *defective* or that they malfunctioned.

Thus, the crux of the Lawrence County action as it relates to the Moorheads is a claim of negligent failure to warn.

Trial Court Opinion at 5 (emphasis added).

Harford, on the other hand, suggests the instant complaint should be construed under the rubric of "products liability" and not "negligence." Harford argues that although the plaintiff has alleged "negligence" in his complaint, the failure to instruct as to the proper use or to warn as to the dangers of improper use of a product are common elements of proof involved in establishing that a product is "defective" and therefore "unsafe," and thus the instant complaint is merely a "defective product" claim repackaged semantically to evade the "product hazard" exclusion.

It is true, as Harford urges, that a product may be rendered "defective" because it lacks necessary warnings or instructions which the seller should have supplied. In the landmark decision *Webb v. Zern*, 422 Pa. 424, 220 A.2d 853 (1966), the theory of strict liability was adopted with regard to defective products in Pennsylvania. In *Berkebile v. Brantly Helicopter Corporation*, 462 Pa. 83, 337 A.2d 893 (1975), a *plurality* of our Supreme Court observed that under strict liability:

A "defective condition" is not limited to defects in design or manufacture. The seller must provide with the product every element necessary to make it safe for use. *One such element may be warnings and/or instructions concerning use of the product. A seller must give such warnings and instructions as are required to inform the user or consumer of the possible risks and inherent limitations of his product. Restatement (Second) of Torts § 402A, comment h. If the product is defective absent such warnings, and the defect is a proximate cause of the plaintiff's injury, the seller is strictly liable without proof of negligence....* Where

warnings or instructions are required to make a product non-defective, it is the duty of the manufacturer to provide such warnings in a form that will reach the ultimate consumer and inform of the risks and inherent limits of the product. The duty to provide a non-defective product is non-delegable....

*Id.*, 337 A.2d at 902–903 (citations omitted). Three years later, in *Azzarello v. Black Brothers Co., Inc.*, 480 Pa. 547, 391 A.2d 1020 (1978), a *majority* of our Supreme Court adopted the position taken by the *Berkebile* plurality, thus removing any doubt as to the viability of a claim alleging a failure to warn under the auspices of strict liability. Since that time, a multitude of cases alleging strict liability in tort for the failure to adequately instruct or to warn have been recognized under the theory included in § 402A of the Restatement (Second) of Torts.[1] *See e.g. Mackowick v. Westinghouse Electric Corporation*, —— Pa. ——, 575 A.2d 100 (1990); *Sherk v. Daisy–Heddon, Etc.*, 498 Pa. 594, 450 A.2d 615 (1982); *Toth v. Economy Forms Corp.*, 391 Pa.Super. 383, 571 A.2d 420 (1990); *Walton v. Avco*, 383 Pa.Super. 518, 557 A.2d 372 (1989); *Ellis v. Chicago Bridge & Iron Co.*, 376 Pa.Super. 220, 545 A.2d 906 (1988); *Carrecter v. Colson Equipment Co.*, 346 Pa.Super. 95, 499 A.2d 326 (1985); *Fravel v. Suzuki Motor Co. Ltd.*, 337 Pa.Super. 97, 486 A.2d 498 (1984); *Dambacher by Dambacher v. Mallis*, 336 Pa.Super. 22, 485 A.2d 408 (1984); *Pegg v. General Motors Corp.*, 258 Pa.Super 59, 391 A.2d 1074 (1978); *Sny-*

---

**1.** Restatement (Second) of Tort § 402A provides:

"(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2) The rule stated in Subsection (1) applies although

(a) the seller has exercised all possible care in the preparation and sale of his product, and

(b) the user or consumer has not brought the product from or entered into any contractual relation with the seller."

Restatement (Second) of Torts, § 402A (1965).

*der v. City of Philadelphia,* 129 Pa.Cmwlth. 89, 564 A.2d 1036 (1989).

However, it is also true, as the Moorheads counter, and as the complaint avers, that a seller or supplier of products may be deemed "negligent" as well for failing to provide adequate warnings or instructions which a reasonable seller or supplier would have. *See Wissman v. General Tire Co.,* 327 Pa. 215, 217, 192 A. 633, 634 (1937) (citing *Rosebrock v. General Electric Co.,* 236 N.Y. 227, 140 N.E. 571 (1923) (finding liability where defendant negligently supplied chattels likely to be dangerous for the use for which they were supplied); *Bisson v. John B. Kelly, Inc,* 314 Pa. 99, 170 A. 139 (1934) (finding liability where defendant negligently manufactured chattels likely to be dangerous for the use for which they were supplied); *Griffith v. Atlantic Refining Co.,* 305 Pa. 386, 157 A. 791 (1931) (same). Indeed, there exist at least five sections in the Restatement (Second) of Torts, *i.e.* §§ 388,[2] 392,[3] 394,[4] 395,[5] and 398,[6] which

**2. § 388 Chattel Known to be Dangerous for Intended Use**

One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier

(a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and

(b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and

(c) *fails to exercise reasonable care to inform them* of its dangerous condition or *of the facts which make it likely to be dangerous.* (Emphasis added).

**3. § 392. Chattel Dangerous for Intended Use**

One who supplies to another, directly or through a third person, a chattel to be used for the supplier's business purposes is subject to liability to those for whose use the chattel is supplied, or to those whom he should expect to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by persons for whose use the chattel is supplied

(a) if the supplier *fails to exercise reasonable care* to make the chattel safe for the use for which it is supplied, or

(b) if he *fails to exercise reasonable care* to discover its dangerous condition or character, and to inform those whom he should expect to use it.

could arguably be used as a vehicle to establish *negligence* in failing to instruct or warn. Moreover, each of these sections, notwithstanding amenability to expression under products liability theories, have been cited with approval by the courts of this Commonwealth in *negligence* actions. *See e.g. Thomas v. Arvon Products Co.*, 424 Pa. 365, 370, 227 A.2d 897, 900 (1967) (citing § 388); *Thomas v. Ribble*, 404 Pa. 296, 299–300, 172 A.2d 280, 282 (1961) (same); *Dunn v. Atlantic Refining Company*, 391 Pa. 65, 69, 137 A.2d 262, 264 (1958) (same); *Foley v. Pittsburgh–Des Moines Co.*, 363 Pa. 1, 29–38, 68 A.2d 517, 529–32 (1949) (citing §§ 388, 394, and 395 and collecting authorities); *Scurfield v. Federal Laboratories*, 335 Pa. 145, 150, 6 A.2d 559, 561 (1939) (citing §§ 394, 395, & 398); *Gray v. H.C. Duke & Sons, Inc.*, 387 Pa.Super 95, 110–12, 563 A.2d 1201, 1209–10 (1989) (citing § 388); *Herleman v. Trumbauer Auto Sales*, 346 Pa.Super 494, 497–98, 499 A.2d 1109, 1110 (1985) (same); *Trimpey Tire Sales and Service Inc. v. Stine*, 266 Pa.Super. 91, 93, 403 A.2d 108, 109 (1979) (citing

(Emphasis added).

**4. § 394. Chattel Known to be Dangerous**

The manufacturer of a chattel which he knows or has reason to know to be, or to be likely to be, dangerous for use is subject to the liability of a supplier of chattels with such knowledge.

**5. § 395. Negligent Manufacture of Chattel Dangerous Unless Carefully Made**

A manufacturer who *fails to exercise reasonable care* in the manufacture of a chattel which, unless carefully made, he should recognize as involving *an unreasonable risk of causing physical harm* to those who use it for a purpose for which the manufacturer should expect it to be used and to those whom he should expect to be endangered by its probable use, is subject to liability for physical harm caused to them by its lawful use in a manner and for a purpose for which it is supplied.

(Emphasis added).

**6. § 398. Chattel Made Under Dangerous Plan or Design**

A manufacturer of a chattel made under a plan or design which makes it dangerous for the use for which it is manufactured is subject to liability to others whom he should expect to use the chattel or to be endangered by its probable use for physical harm caused by his *failure to exercise reasonable care* in the adoption of a safe plan or design.

(Emphasis added).

§ 395); *Lambert v. PBI Industries,* 244 Pa.Super. 118, 126, 366 A.2d 944, 950 (1976) (same); *McKenna v. Art Pearl Works, Inc.,* 225 Pa.Super. 362, 367–68 n. 3, 310 A.2d 677, 680 n. 3 (1973) (citing §§ 388, 392); *Ostrowski v. Crawford Door Sales Co. of Scranton,* 207 Pa.Super. 424, 429–30, 217 A.2d 758, 761 (1966) (citing § 388); *Labick v. Vicker,* 200 Pa.Super. 111, 116–18, 186 A.2d 874, 877–78 (1962) (citing §§ 388, 392).

The difficulty in determining the nature of the instant complaint lies in the fact that in the "failure to warn" context, the theories of strict liability (in proving the product defective) and negligence (in proving the seller acted unreasonably), appear to overlap. As expressed by a recent panel of this Court,

> Although there is contrary language in some decisions, most authorities have been forced to concede that in practice a determination of the adequacy of warnings can be made only by borrowing from negligence concepts. Thus, Dean Keeton has written:

> > [A] product may be defective as marketed because of a failure to adequately warn, or a failure to use proper means to warn about a risk or hazard related to the way the product was designed.... [L]iability is imposed on the ground that the seller or manufacturer failed adequately to warn about some risk or hazard, or failed adequately to instruct about how to avoid the risk or harm. Under this approach, the product is allegedly defective as marketed because of the failure to properly present it to purchasers and users.

> > Notwithstanding what some courts have said, in establishing this ground of recovery, the plaintiff in most states must prove negligence in the failure to warn properly. There will be no liability in these cases without a showing that the defendant knew or should have known of the risk or hazard about which he failed to warn. Moreover, there will be no liability unless the seller or manufacturer failed to take the precautions

that a reasonable person would take in presenting the product to the public.

*Although this ground of recovery is sometimes referred to as strict liability, it is really nothing more than a ground of negligence liability better described as the sale of a product in a defective condition.*

*Remy v. Michael D's Carpet Outlets,* 391 Pa.Super. 436, 445–446, 571 A.2d 446, 451 (1990) (per Wieand, J.) (*quoting* W. Keeton, *The Meaning of Defect in Products Liability Law—A Review of Basic Principles,* 45 Mo.L.Rev 579, 586–587 (1980)); *see also Ellis v. Chicago Bridge & Iron Co.,* 376 Pa.Super. 220, 232–33, 545 A.2d 906, 912–13 (1988); *Dambacher by Dambacher v. Mallis,* 336 Pa.Super. 22, 65–90, 485 A.2d 408, 430–443 (1984) (Wieand, J., dissenting); Gallagher, *Rise of the Phoenix,* 16 Toledo Law Review 1053, 1074 (1985).

In light of the virtually inextricable relationship between the torts, one panel of this Court has even declared that for the purposes of the collateral estoppel issue identity requirement, an allegation of a failure to warn can be construed under both the principles of *negligent conduct* and *defective product* strict liability so as to give a finding on one theory collateral estoppel effect. *Day v. Volkswagenwork v. Aktiengesellschaft,* 318 Pa.Super. 225, 237–38, 464 A.2d 1313, 1319 (1983) (holding that federal ruling that as a matter of law there was "no liability for a failure to warn" precluded relitigation in the state court under *either* the theories of strict liability under § 402A *or* negligence). Similarly, prior to *Berkebile,* our Supreme Court rejected a claim that a new cause of action for product liability/failure to warn had been injected into a negligence/failure to warn suit after the statute of limitations period for the strict liability had expired, and explained:

Appellant's claim under § 402A was clearly implicit in his allegations of negligence in the design and manufacture of the crane. The principle of strict liability in tort adds nothing to Kuisis' theory of how the accident occurred; it operates merely to simplify his proof problem by eliminat-

ing the issue of negligence from the case.... Assuming arguendo that two different causes of action are involved here, for purposes of the statute of limitations, both were stated in the original complaint.

*Kuisis v. Baldwin–Lima–Hamilton Corporation,* 457 Pa. 321, 325, 319 A.2d 914, 918 (1974).

Nonetheless, whatever similarities may be said to exist in practice, the " 'Pennsylvania Supreme Court, perhaps more than any other state appellate court in the nation, has been emphatic in divorcing negligence concepts from product liability doctrine.' " *Remy v. Michael D's Carpet Outlets, supra,* 571 A.2d at 452 (quoting *Staymates v. ITT Holub Industries,* 364 Pa.Super. 37, 45, 527 A.2d 140, 144 (1987)).[7] This Court has previously held, after observing, *inter alia,* our Supreme Court's reluctance to apply theories of contributory negligence to actions based on strict liability in *McCown v. International Harvester Co.,* 463 Pa. 13, 342 A.2d 381 (1975),

> ... it [*McCown*] provides a clear indication of the direction the Court was taking with respect to its product liability doctrine. At a minimum, the Court made apparent its firm belief that negligence concepts did not belong in product liability cases. This has been the theme of several opinions by the Court in an effort to differentiate or police negligence concepts from developing concepts of product liability law. *See, e.g. Azzarello v. Black Brothers Co., Inc.,* 480 Pa. 547, 391 A.2d 1020 (1978); *Berkebile v. Brantly Helicopter Corp.,* 462 Pa. 83, 337 A.2d 893 (1975).

*Staymates v. ITT Holub Industries, supra,* 527 A.2d at 143 (*quoting Bike v. American Motors Corp.,* 101 F.R.D. 77, 80 (E.D.Pa.1984)).

Several courts have attributed our Supreme Court's strict segregation of thought as grounded in the traditional view that strict liability is "product-oriented" while negligence is "conduct-oriented." *See Sherk v. Daisy–Heddon, etc.,* 498

---

7. *See also Conti v. Ford Motor Co.,* 578 F.Supp. 1429, 1434 (E.D.Pa. 1983).

Pa. 594, 613, 450 A.2d 615, 625 (1982) (Larsen, J., dissenting); *Kuisis v. Baldwin–Lima–Hamilton Corp., supra,* 319 A.2d at 918 & n. 8 (*citing Saracina v. Cotoia,* 417 Pa. 80, 85, 208 A.2d 764, 767 (1965); *Polk v. Western Bedding Co.,* 145 Pa.Super. 142, 147, 20 A.2d 845, 847 (1941)); *Snyder v. City of Philadelphia, supra,* 564 A.2d at 1039 n. 5 (*citing Freund v. Cellofilm Properties, Inc.,* 87 N.J. 229, 432 A.2d 925 (1981); *cf. Gallagher, supra,* at 1074. Regardless of motivation or analytical justification, the fact remains that Pennsylvania courts consistently analyze the negligence/failure to warn and strict liability/failure to warn causes of action separately, treating conduct-related counts apart from product-related counts. *See Wenrick v. Schloemann–Siemag Aktiengesellschaft,* 523 Pa. 1, 564 A.2d 1244 (1989); *Baldino v. Castagna,* 505 Pa. 239, 478 A.2d 807 (1984); *Incollingo v. Ewing,* 444 Pa. 263, 282 A.2d 206 (1971); *Toth v. Economy Forms Corp., supra,* 571 A.2d 420; *Smith v. Linn,* 386 Pa.Super. 392, 563 A.2d 123 (1989); *Ellis v. Chicago Bridge & Iron Co., supra,* 545 A.2d at 917; *Binder v. Jones & Laughlin Steel Corp.,* 360 Pa.Super. 39, 520 A.2d 863 (1987); *Carrecter v. Colson Equipment Co., supra,* 499 A.2d 326; *Fravel v. Suzuki Motor Co., Ltd., supra,* 486 A.2d 498; *Dambacher by Dambacher v. Mallis, supra,* 485 A.2d 408; *Pegg v. General Motors Corp., supra,* 391 A.2d 1074.

Accordingly, we find that where, as here, a claim is brought under the auspices of a "negligent failure to warn," it is appropriate to view the complaint as one charging improper *conduct,* and not one of making a defective *product,* despite arguable similarities between such claims. The fact that the same facts could have given rise to a *product* related claim is irrelevant; nothing in our prior case law suggests that such claims must be asserted under strict liability theories rather than negligence theories. Indeed, there appears at this time to be no restriction even requiring an election between theories; rather, both may be pursued in a single suit. *See Sherk v. Daisy–Heddon, etc.,* 285 Pa.Super. 320, 334–35, 427 A.2d 657, 663–64 (1981),

*reversed on other grounds,* 498 Pa. 594, 450 A.2d 615 (1982) (plaintiff may choose to sue under either theory); Pa.R.Civ.P. 1020(a).

## C. *Coverage*

■ Having previously determined that the "Products Hazard" exclusion in the instant policy precludes coverage of claims alleging as the cause in fact of injuries a *product,* not a service, and having previously determined that the instant claim alleges as the cause in fact of the injuries *conduct,* not a product, we find the "Products Hazard" exclusion inapplicable herein. The broad declaration of coverage clearly provides for coverage of claims which are not excluded, and thus we hold that Harford will have to cover the instant claim if it is successfully maintained.

We note that in other jurisdictions, not bound by our Supreme Court's "emphatic divorce of negligence and strict liability concepts," several courts have nonetheless found that the "Products Hazard" exclusion does not apply to "failure to warn" claims. For example, in *Chancler v. American Hardware Mut. Ins. Co.,* 109 Idaho 841, 712 P.2d 542 (1985), the Supreme Court of Idaho overruled a lower court's decision that the exclusion was applicable to a claim alleging failure to provide information about maximum weight loads for a crane.[8] The Idaho Supreme Court explained:

> [T]he Court of Appeals placed itself in a needless dilemma of determining whether Christensen's claim is one sounding in strict products liability or in negligence. Nothing precludes it from sounding in both theories. So long as

**8.** Relying on *Inductotherm Corp. v. New Jersey Manufacturers Casualty Insurance Co.,* 83 N.J.Super. 464, 200 A.2d 358 (N.J.Law.Div.1964) (where "service" consists only of furnishing information about a product and its limitations, similar "Products Hazard" exclusion applies) (expressly not followed by *Eastcoast Equipment v. Maryland Casualty Co., supra,* 218 A.2d 91), the lower court in *Chancler* determined that such an allegation did not claim as the cause in fact of the injuries a "service" distinguishable from the product. *Chancler v. American Hardware Mut. Ins. Co.,* 107 Idaho 953, 955, 694 P.2d 1301, 1303 (1985) (citing *Friestad, supra* ).

the necessary proof is presented, [the plaintiff] may prevail on either claim.

\* \* \* \* \* \*

[The "Products Hazard" exclusion] does not clearly and precisely exclude claims grounded in negligence. What the exclusion does at best, and this in a rather inartful manner, is deny coverage only for claims grounded in strict products liability. We reach this conclusion by noting the following: The "products hazard" definition is defined as an injury "arising out of the named insured's products...." Nowhere does it purport to exclude injuries arising out of negligent conduct, and we decline to so expand the definition. *We therefore hold that insofar as* [the underlying plaintiff] *has made out a claim for negligence, and he has, Chancler's policy does not exclude coverage pursuant to the "products hazard" exclusion.*

*Id.,* 712 P.2d at 547–48; *see also Scarborough v. Northern Assur. Co. of America,* 718 F.2d 130 (5th Cir.1983) ("Products Hazard" exclusion *not applicable* where complaint alleged negligent failure to warn of dangers associated with the use of sand during sandblasting operations) (*relying on Cooling v. United States Fid. & Guar. Co., supra,* 269 So.2d 294).

Thus, other courts have found that the "Products Hazard" exclusion is simply *too ambiguous* to preclude coverage of a "negligence/failure to warn claim." Essentially, such holdings represent the view that "failure to warn" claims fall within an ambiguous boarder region wherein "product liability/failure to warn" claims and "negligence/failure to warn" claims overlap, and that for an insurance company to exclude coverage of this special class of actions, it must do so explicitly. This position is perhaps best expressed by the Louisiana Court of Appeals, in one of the earliest and most often quoted cases in this area:

The definitions of products hazard and completed operations hazard do not mention omissions or failure to warn when there is no affirmative duty [imposed by the insur-

er] to do so. The definitions of products hazard do include injuries arising out of representations or warranties. But the converse, the failure to represent is not included in these definitions. *If the parties intended to limit the liability of the insurer by excluding coverage for omissions and failure to warn when there is no affirmative duty to warn, the insurer could have so provided.*

*Cooling, supra,* 269 So.2d at 297–98. (Emphasis added).

We agree with this analysis. As this Court has previously explained:

Precise definition is particularly important in cases in which an insured purchases a comprehensive general liability policy to protect a business which entails the use of potentially harmful substances possessing debilitating qualities of unknown parameters. In that instance, the insurance company providing coverage should take extra care to assure that the policy leaves no room for question, at peril of being forced to pay for greater coverage than anticipated. *Delaware County Construction Co. v. Safeguard Ins. Co.,* 209 Pa.Super. 502, 509, 228 A.2d 15, 18 (1967).

*Techalloy Co. v. Reliance Ins. Co., supra,* 487 A.2d at 824. While we find that the instant exclusion clearly precludes claims which allege the product was defective for failing to include instructions or warnings, the best that can be said for this exclusion with regard to negligent failure to warn claims is that reasonable men could differ as to its proper scope. *See Loomer v. M.R.T. Flying Service, Inc., supra,* 558 A.2d at 105.

To hold in favor of Harford, here, would require this Court to find that a failure to warn negligence claim, which *ostensibly* asserts negligence in failing to reasonably *instruct* or *warn,* is *essentially* a product liability claim for failure to properly *manufacture* (with necessary warnings) and was intended to be excluded by the Products Hazard exclusion. The problem for Harford is that failure to warn claims are not essentially negligence claims *or* essentially

product liability claims. Rather, they are essentially *both* and fall in a region of analytical overlap between two commonly distinct theories of liability. As the drafter of the contract, it was incumbent upon Harford to expressly include that region of overlap in the exclusion if that was its intent.

Insurance companies may avoid exposure to "failure to warn negligence" liability by *unequivocally* including such claims within a redrafted "Products Hazard" exclusion. The instant policy does not unequivocally provide to the insured any indication that such a claim would not be covered. Accordingly, we must hold against the insurance company as drafter of the provision. *See Standard Venetian Blind, supra,* 469 A.2d at 566.

## II. *Conclusion*

For the foregoing reasons, we find that the trial court was correct in holding that as a matter of law, the "Products Hazard" exclusion contained in the policy the Moorheads purchased from Harford does not apply. Consequently, Harford would be obligated to cover any judgment entered against the Moorheads should the underlying suit be successfully maintained. Accordingly, we hold Harford owes the Moorheads a duty to defend them in that suit.

Order AFFIRMED.

DEL SOLE, J., concurs in the result.