Edward BAKER and Jack Miller,
et. al., Plaintiffs,

v.

DEUTSCHLAND GMBH, and Sorin
Group USA, Inc., Defendants,

1:16–cv–00260

United States District Court,
M.D. Pennsylvania.

Filed 10/11/2016

David S. Senoff, Melissa F. Hague, Paola Pearson, Anapol Weiss, Sol H. Weiss, Anapol, Schwartz, Weiss, Cohan, Feldman & Smalley, P.C., Philadelphia, PA, William M. Audet, Audet & Partners, LLP, San Francisco, CA, for Plaintiffs.

Bridget M. Ahmann, Christin Jaye Eaton, Faegre Baker Daniels LLP, Minneapolis, MN; Jared B. Briant, Faegre Baker Daniels LLP, Denver, CO, Mark E. Gebauer, Ecker Seamans Cherin & Mellott, LLC, Harrisburg, PA, for Defendants.

## MEMORANDUM & ORDER

John E. Jones III, United States District Judge

Plaintiffs Edward Baker and Jack Miller bring the above-captioned putative class action asserting a medical monitoring claim against Defendants Sorin Group Deutschland Gmbh ("Sorin") and Sorin Group USA, Inc. ("Sorin"). Plaintiffs filed an Amended Complaint on March 21, 2016 (Doc. 8) alleging that the putative class was exposed to nontuberculous mycobacterium ("MTM") through a Sorin 3T Heater–Cooler System ("3T System") used to regulate their blood temperature during open heart surgeries at WellSpan York Hospital ("WellSpan") and Penn State Milton S. Hershey Medical Center. ("Hershey"). Presently pending before the Court is Defendants' Motion to Dismiss for failure to state a claim ("the Motion"). (Doc. 22).[1] The Motion has been fully briefed (Docs. 23, 33, 36) and is therefore ripe for our review. For the reasons that follow, the Motion shall be denied.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In accordance with the standard of review applicable to a motion to dismiss, the

---

1. Also pending before the Court is Defendants' request for oral argument. (Doc. 34). That request is denied inasmuch as we find oral argument to be unnecessary given the extensive briefing of this matter.

following facts regarding the claim itself are derived from Plaintiffs' Amended Complaint. (Doc. 8).

Plaintiff and proposed class representative Edward Baker is a resident of Pennsylvania. (Doc. 8, ¶ 9). On March 18, 2015, Baker underwent a quadruple bypass at WellSpan York Hospital, and a Sorin 3T Heater–Cooler System was used during his surgery. (*Id*). Plaintiff and proposed class representative Jack Miller is also a resident of Pennsylvania. (*Id.*, at ¶ 10). On March 27, 2015, Miller underwent a triple bypass surgery at WellSpan and a 3T system was used on him as well. (*Id.*). Both plaintiffs were exposed to NTM due to the use of the 3T System during their surgeries. (*Id.*, at ¶ 9–10).

Sorin is a foreign for-profit corporation headquartered in Munich, Germany and designed, manufactured, and marketed the 3T System used in Plaintiffs' surgeries. (*Id.*, at ¶ 12). Sorin USA is a United States based company that designed, manufactured, marketed, and distributed the 3T System used in the Plaintiffs' surgeries. (*Id.*, at ¶ 13). Sorin and Sorin USA are both wholly owned subsidiaries of LivaNova PLC, a company dismissed as a defendant in this matter for lack of personal jurisdiction. (*Id.*, at ¶ 13) (Doc. 45).

On or about October 26, 2015, WellSpan announced to the public that "1300 of its patients were exposed to NTM, a rare and potentially fatal bacteria, during open heart surgeries," with a risk of exposure for surgeries between roughly October 1, 2011 and July 24, 2015. (Doc. 8, ¶¶ 14–15). Hershey made a similar announcement on or about November 10, 2015, stating that 2300 of its patients were exposed to the same bacteria during open heart surgery between November 5, 2011 and November 5, 2015. (*Id.*, at ¶ 16). Along with the public announcements, the hospitals sent individual letters to affected patients informing them of their exposure and advising a follow up with a physician. (*Id.*, at ¶ 18). Both WellSpan and Hershey have discontinued the use of the 3T System. (*Id.*, at ¶ 56).

NTM "occurs naturally in the environment and rarely causes illness," but "poses a unique health risk to those with compromised immune systems, and in particular those who have undergone invasive surgical procedures." (*Id.*, at ¶ 19). It can take anywhere between two weeks and four years for a NTM infection to manifest itself in an exposed patient. (*Id.*, at ¶ 20). Even when manifested, NTM symptoms are non-specific and may present in the form of "fever, pain, redness, heat or pus around a surgical incision, night sweats, joint pain, muscle pain and fatigue." (*Id.*, at ¶ 21). If diagnosed early, a NTM infection may be successfully treated with antibiotics; however, late diagnoses pose a significant risk of death for those with weakened immune systems. (*Id.*, at ¶ 25). The recommended monitoring period after exposure to NTM is at least four years. (*Id.*, at ¶ 20).

At the time of filing Plaintiffs' Amended Complaint, five people had died from NTM infections after exposure through open heart surgery at WellSpan. (*Id.*, at ¶ 26). "A Joint Investigation by the Centers for Disease Control ("CDC") and the Pennsylvania Department of Health ("PADOH") concluded that NTM was 'likely a contributing factor' of these deaths." (*Id.*, at ¶ 27). Similarly, five people had been diagnosed with NTM infections from open heart surgery at Hershey at the time of filing the Amended Complaint. (*Id.*, at ¶ 28). However, Plaintiffs seek class certification for those who underwent open heart surgeries at WellSpan and Hershey during the respective time periods and are currently asymptomatic for NTM infection. (*Id.*, at ¶ 60). "Claims for actual injury from an

NTM infection are excluded from the claims brought in this class action." (*Id.*).

In response to the risk of exposure to NTM, WellSpan and Hershey both have created on-site, free clinics for patients to "obtain screening for and medical treatment associated with diagnosed infections." (*Id.*, at ¶ 52). It is unknown to Plaintiffs how long these services will be offered or whether there are limitations to the free services "which may inhibit the early detection of NTM infections." (*Id.*, at ¶ 55).

According to the Amended Complaint, "[t]he CDC has affirmatively linked the NTM infection risk at WellSpan and Hershey Medical Center to the Sorin 3T Heater–Cooler System" and the PADOH has concluded that "exposure to contaminated HCUs [heater-cooler units] is associated with NTM among patients with open heart surgery." (*Id.*, at ¶¶ 29, 30). Plaintiffs cite to sources in their Amended Complaint that purport to link dangerous bacterium to contaminated heater-cooler systems. (*Id.*, at ¶¶ 33–37).

On July 15, 2015, the FDA issued a Class 2 recall of the 3T System, citing to the potential for colonization of organisms, including NTM, when "proper disinfection and maintenance is not performed per instructions for use." (*Id.*, at ¶ 39). In response, the Defendants enhanced their hygiene instructions. (*Id.*, at ¶ 41). Plaintiffs allege that the Defendants "knew or should have known that design and/or manufacturing defects in its 3T System renders it prone to bacterial colonization, *regardless of the cleaning and disinfection procedures used.*" (*Id.*, at ¶ 43) (emphasis in original). Plaintiffs cite to different health advisories and Food and Drug Administration communications to support this. (*Id.*, at ¶¶ 44–51).

Plaintiffs commenced this action by filing a Complaint on February 12, 2016. (Doc. 1). Plaintiffs submitted an Amended Complaint on March 21, 2016, asserting medical monitoring and declaratory judgment claims against Sorin, Sorin USA, and the two defendants' holding company, LivaNova PLC. (Doc. 8). Sorin and Sorin USA filed the instant Motion on May 20, 2016. (Doc. 22). LivaNova PLC also filed a motion to dismiss on May 20, 2016 for lack of personal jurisdiction and failure to state a claim. (Doc. 24). On September 29, 2016, we granted LivaNova PLC's motion to dismiss the complaint for lack of personal jurisdiction (Doc. 45), leaving Sorin and Sorin USA as the surviving defendants in this matter.

## II. STANDARD OF REVIEW

In considering a motion to dismiss pursuant to Rule 12(b)(6), courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)). In resolving a motion to dismiss pursuant to Rule 12(b)(6), a court generally should consider only the allegations in the complaint, as well as "documents that are attached to or submitted with the complaint, . . . and any matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case." *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).

A Rule 12(b)(6) motion tests the sufficiency of the complaint against the pleading requirement of Rule 8(a). Rule 8(a)(2) requires that a complaint contain a short and plain statement of the claim showing that the pleader is entitled to

relief, "in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). While a complaint attacked by Rule 12(b)(6) motion to dismiss need not contain detailed factual allegations, it must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). To survive a motion to dismiss, a civil plaintiff must allege facts that "raise a right to relief above the speculative level...." *Victaulic Co. v. Tieman*, 499 F.3d 227, 235 (3d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955). Accordingly, to satisfy the plausibility standard, the complaint must indicate that defendant's liability is more than "a sheer possibility." *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557, 127 S.Ct. 1955).

■ Under the two-pronged approach articulated in *Twombly* and later formalized in *Iqbal*, a district court must first identify all factual allegations that constitute nothing more than "legal conclusions" or "naked assertions." *Twombly*, 550 U.S. at 555, 557, 127 S.Ct. 1955. Such allegations are "not entitled to the assumption of truth" and must be disregarded for purposes of resolving a 12(b)(6) motion to dismiss. *Iqbal*, 556 U.S. at 679, 129 S.Ct. 1937. Next, the district court must identify "the 'nub' of the ... complaint—the well-

pleaded, nonconclusory factual allegation[s]." *Id.* Taking these allegations as true, the district judge must then determine whether the complaint states a plausible claim for relief. *See id.*

■ However, "a complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." *Phillips*, 515 F.3d at 231 (citing *Twombly*, 550 U.S. at 556–57, 127 S.Ct. 1955). Rule 8 "does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Id.* at 234.

## III. DISCUSSION

Plaintiffs assert a medical monitoring claim against the Defendants in Count I, and seek a declaratory judgment that the 3T System is a defective product in Count II. Defendants have moved to dismiss both claims under Rule 12(b)(6) for failure to state a claim.[2] Each count will be considered in turn.

### A. Count I—Medical Monitoring

Defendants argue that Count I must fail for several reasons, all tracking the elements of a proper medical monitoring claim. First, Defendants assert that Plaintiffs cannot allege a plausible claim that they were exposed to "more than the 'mere possibility' of exposure beyond what they would normally encounter." (Doc. 23, p. 5). Second, "Plaintiffs cannot allege more than a 'mere possibility' that they were exposed to NTM during open heart surgery." (*Id.*, at p. 6). Third, Plaintiffs have not sufficiently alleged that they were

---

**2.** We note that the Defendants have also raised arguments concerning class certification in their supporting briefs. These arguments are not appropriately brought on a Rule 12(b)(6) motion to dismiss, and the Court does not consider them with this Motion.

exposed to a proven hazardous substance. (*Id.*, at p. 8). Fourth, Plaintiffs failed to allege a "significantly increased risk of contracting serious latent disease." (*Id.*, at p. 10). Finally, Defendants argue that Plaintiffs failed to allege that a "monitoring program will make early detection of disease possible." (*Id.*, at p. 12).

Plaintiffs respond to each claim by pointing to areas of their Amended Complaint to support their contention that they sufficiently alleged each element of a medical monitoring claim. Plaintiffs argue that "Defendants' claim that Plaintiffs fail to adequately allege the elements of medical monitoring is, in actuality, a thinly disguised demand for proof rather than plausibility at the pleading stage." (Doc. 33, p. 1). We agree with Plaintiffs.

 Pennsylvania has recognized medical monitoring as a claim that is distinct from other tort claims involving actual physical injury. *Redland Soccer Club, Inc. v. Dep't of the Army & Dep't of Def. of the U.S.*, 548 Pa. 178, 696 A.2d 137, 145–146 (1997). The elements necessary to state an adequate claim for relief for medical monitoring are: "(1) exposure greater than normal background levels, (2) to a proven hazardous substance; (3) caused by defendants' negligence; (4) as a proximate result of the exposure, plaintiffs have a significantly increased risk of contracting a serious latent disease; (5) a monitoring program procedure exists that makes the early detection of the disease possible: (6) the prescribed monitoring regime is different from that normally recommended in the absence of exposure; (7) the prescribed monitoring regime is reasonably necessary according to contemporary scientific principles." *Id.* At the pleading stage, Plaintiffs only need to allege facts in support of these elements sufficient to create a plausible claim for relief. *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937. To be sure, "a much greater showing is required to actu-

ally prove this claim, including expert testimony," but upon a motion to dismiss we look only to the factual allegations and decide whether "Plaintiffs have sufficiently alleged plausible facts necessary to support a claim for medical monitoring." *Fiorentino v. Cabot Oil & Gas Corp.*, 750 F.Supp.2d 506, 513 (M.D. Pa. 2010) (Jones, J.).

Contrary to Defendants' assertion, Plaintiffs have alleged sufficient factual matter in their Amended Complaint to support each element of a plausible claim for medical monitoring.

 First, Plaintiffs alleged an exposure greater than normal background level by pointing to the exposure announcements from WellSpan and Hershey, the fact that the exposure occurred during open heart surgeries, and the colonization of the bacteria which is then aerosolized through the 3T System's exhaust vent. (Doc. 8, ¶¶ 14, 16, 29, 31). While Plaintiffs recognize that NTM "occurs naturally in the environment," the allegations that the 3T Systems aerosolized this bacteria into the operating room during an invasive surgery plausibly supports that Plaintiffs were exposed to a greater amount of NTM than naturally occurring background levels. (*Id.*, at ¶ 19). Defendants vehemently posit that Plaintiffs have adequately pled this element, pointing to evidence to suggest that Plaintiffs cannot prove that they were definitively exposed to abnormal levels of NTM. (Doc. 23, p. 5). These arguments, however, go to the veracity of the claims rather than the plausibility, and are more appropriately raised at summary judgment or trial stages of the litigation. As we are directed to accept Plaintiffs' factual allegations of the Amended Complaint as true, we find that Plaintiffs have adequately pled exposure to NTM at more than background levels.

Relatedly, Defendants argue that Plaintiffs have not shown more than a possibility of exposure to NTM during open heart surgery altogether. (Doc. 23, at p. 7). Again, Plaintiffs have pointed to evidence that show it is plausible that they were, in fact, exposed to NTM, including the notices sent by WellSpan and Hershey and evidence of others similarly situated contracting NTM infections. (Doc. 8, ¶¶ 14, 15, 26). To require the Plaintiffs to allege more facts to show exposure would effectively bar medical monitoring claims altogether; by its nature, a medical monitoring claim attracts Plaintiffs who have not yet shown symptoms of exposure. Circumstantial facts in support of exposure allegations are all that is available to Plaintiffs in this situation. Thus, we reject Defendants' argument that Plaintiffs have failed to show a plausible claim of exposure.

Defendants' next argument that Plaintiffs have failed to show that NTM is a proven hazardous substance yet again demands Plaintiffs to prove their allegations at the pleading stage. Defendants point to documents where NTM is stated to be "typically not harmful" and point to "the great weight of authority in medical monitoring cases" to argue that NTM is not a hazardous substance appropriate for medical monitoring recovery. (Doc. 23, p. 9). This evidence once again goes to the veracity of Plaintiffs' claims rather than the plausibility from the Amended Complaint itself. There, the Plaintiffs have alleged that "NTM poses a unique health risk to those with compromised immune systems," "most commonly results in pulmonary or cardiovascular disease," and causes a "significant risk of death." (Doc. 8 ¶¶ 19, 25). Taking these allegations as true, Plaintiffs have sufficiently pled that NTM is a hazardous substance; it is not until later in the litigation that Plaintiff will bear the burden of proving these allegations.

Defendants argue that Plaintiffs have failed to allege that the exposure to NTM has caused a significant risk of contracting a serious latent disease. (Doc. 23, p. 10). This argument is belied, once again, by the Amended Complaint. Plaintiffs have alleged that NTM exposure "most commonly results in pulmonary or cardiovascular disease" and have pointed to eight individuals at the time of filing that had contracted a NTM infection, five of whom have subsequently passed away because of it. (Doc. 8, ¶¶ 20, 26). Further, Plaintiffs allege that the CDC and PADOH have concluded that NTM was "likely a contributed factor" of these deaths. (Id., at ¶ 27). These allegations certainly make the claim of causation plausible.

Finally, Defendants argue that Plaintiffs have failed to allege that a monitoring program would make early detection of the disease possible. (Doc. 23, p. 12). Again, we look to the Amended Complaint and find sufficient allegations. Plaintiffs allege that the "diagnosis of an NTM infection requires targeted culturing, molecular diagnostic testing and/or other screening processes" by doctors who are "acutely aware of NTM exposure" and that "an NTM infection diagnosed early on may be successfully treated." (Doc. 8, ¶ 23, 25). Plaintiffs also point to the free clinics offered by WellSpan and Hershey as circumstantial evidence that a monitoring program is both possible and recommended after NTM exposure. (Id., at ¶¶ 52–54). Defendants again offer interpretations of evidence and arguments in support of their claim that there is no monitoring regime available for asymptomatic patients, but these arguments go to the weight of the evidence and are ineffective in arguing the failure to state a claim.

The Defendants have not offered specific arguments to refute that Plaintiffs have sufficiently pled the remaining three ele-

ments of a medical monitoring claim-that the Defendants' negligence caused the exposure, that the medical monitoring procedure is different than what would normally be prescribed in the absence of exposure, and that the monitoring is reasonably necessary. However, we note that the Plaintiffs have pled sufficient facts to meet the low burden of plausibility with regard to all seven elements of medical monitoring. Accordingly, we shall deny Defendants' motion to dismiss as to Count I.

### B. Count II—Declaratory Judgment

Count II of the Amended Complaint invokes the Declaratory Judgment Act, 28 U.S.C. § 2201, to seek a judgment by the Court that the 3T System is defective. Defendants move to dismiss Count II of the Amended Complaint for three reasons. First, Defendants argue that, because strict liability does not apply to medical devices in Pennsylvania, declaration of a defect is inappropriate. Second, the declaration of a defect is inconsistent with Plaintiffs' lack of injuries. And finally, declaratory judgment is ill-suited for this case because it deals with negligence and will not conclude the entire controversy. The Court is not persuaded by any of these proffered reasons for dismissal.

The Court struggles to find the relevance of Defendants' first argument. Even if this case were not subject to strict liability law of Pennsylvania, that fact does not provide a reason to dismiss the declaratory judgment claim that the product is defective. A product defect is legally relevant to product liability claims outside the realms of strict liability, namely negligence based charges. *See Harford Mut. Ins. Co. v. Moorhead*, 396 Pa.Super. 234, 248, 578 A.2d 492 (1990) ("the theories of strict liability (in proving the product defective) and negligence (in proving the seller acted unreasonably), appear to overlap."). Plaintiffs have not asserted a claim in strict liability against the Defendants, and con-

trary to Defendants' assertion, their declaratory judgment claim does not "circumvent Pennsylvania law and create a strict liability claim where none exists." (Doc. 23, p. 17). A declaration that the 3T System is defective would not impose strict liability on the Defendants. Rather, Plaintiffs seek a declaration that the 3T System is defective, purportedly to deter the further sale of the product and prevent future harm. (Doc. 33, p. 21). Such a declaration is relevant to the negligence element of the medical monitoring claim and may be useful in future claims by other plaintiffs for negligence based products liability claims against the Defendants.

The Court again labors to discern the relevance of Defendants second argument that the lack of physical injuries to Plaintiffs somehow bars their declaratory judgment claim. It appears that the Defendants believe that the relevance of a product defect only arises in a strict liability claim, where physical injury is a necessary element. (*See* Doc. 23, p. 18). Defendants claim that a defect is relevant only to "traditional product liability" claims, and that therefore "Plaintiffs have no underlying substantive basis to support a declaration that the 3T System is 'defective.'" (*Id.*, at p. 19). However, Defendants acknowledge that "a Pennsylvania medical monitoring claim is negligence based." (*Id.*, at p. 18). Once again, Plaintiffs are not asserting a strict liability claim where physical injury is a necessary element. They are asserting a medical monitoring claim that depends on the negligence of the Defendants. A declaration by this Court that the 3T System is a defective product would undoubtedly have an impact on the issue of the Defendants' negligence in the medical monitoring claim, regardless of physical injury to the Plaintiffs.

Defendants' final argument that declaratory judgment is improper because it will not "fully settle controversies between the

parties and terminate the entire controversy" ignores the plain language of the Declaratory Judgment Act. (*Id.*, p. 19). As Plaintiffs point out, 28 U.S.C. § 2201 provides that "[i]n a case of actual controversy within its jurisdiction... any court of the United States ... may declare the rights and other legal relations of any interested party seeking such declaration, whether further relief is or could be sought." While Defendants are correct in the sense that declaratory judgments are useful for finally deciding full controversies between two parties, that goal is not the only consideration in determining whether declaratory judgment is appropriate. Further, a declaration regarding whether the 3T System is defective would, actually, finally resolve an issue between the parties that will undoubtedly be part of this litigation and potentially future claims as well.

 It is within the Court's discretion whether to hear a declaratory judgment action. In exercising this discretion, Courts are to consider: "(1) the likelihood that a federal court declaration will resolve the uncertainty of obligation which gave rise to the controversy; (2) the convenience of the parties; (3) the public interest in settlement of the uncertainty of obligation; and (4) the availability and relative convenience of other remedies." *United States v. Pennsylvania, Dep't of Envtl. Res.*, 923 F.2d 1071, 1075 (3d Cir.1991) (citations omitted). Defendants have offered no arguments in consideration of these factors to dismiss the declaratory judgment action.

 Further, because there is such overlap between Plaintiffs' declaratory judgment claim and their medical monitoring claim, dismissal would be premature. "Where there is 'some overlap' between plaintiffs' declaratory judgment claim and other substantive claims, courts may refuse to dismiss the declaratory judgment claim if the plaintiffs' 'remaining claims

have not been fully developed ... [and] the Court cannot fully evaluate the extent of the overlap to determine whether declaratory judgment would serve [any] useful purpose in clarifying the legal rights and relationships at issue.'" *Fleisher v. Fiber Composites, LLC*, 2012 WL 5381381, at *12–13 (E.D. Pa. Nov. 2, 2012) (citing *Johnson v. GEICO Cas. Co.*, 516 F.Supp.2d 351, 357 (D.Del.2007)). Here, whether the 3T System is defective will have a strong influence on the medical monitoring claim, specifically the element that requires exposure to be due to the Defendants' negligence. It would be premature to dismiss the declaratory judgment action because, without factual development of the medical monitoring claim, it is unclear whether a declaration of defectiveness would be a useful clarification by the Court. Accordingly, the Motion will be denied with respect to Count II as well.

## IV. CONCLUSION

We find that the Plaintiffs have sufficiently pled factual allegations to state a plausible claim for relief for medical monitoring against the Defendants. Additionally, we find that the Defendants have not offered any persuasive reason to decline exercising our discretionary power to entertain a declaratory judgment action. Thus, Defendants' Motion to dismiss for failure to state a claim shall be denied in its entirety.

NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

1. Defendants' Motion (Doc. 22) is **DENIED** in its entirety.

2. The parties shall conduct a telephonic case management conference with chambers on October 31, 2016 at 2:00 p.m.